773 So.2d 131 (2000)
ABL MANAGEMENT, INC. and D'Wiley's Services, Inc.
v.
BOARD OF SUPERVISORS OF SOUTHERN UNIVERSITY and Agricultural and Mechanical College.
No. 00-C-0798.
Supreme Court of Louisiana.
November 28, 2000.
*132 Linda Jane, Law Clerk, Winston Gerard DeCuir, Decuir & Clark, East Baton Rouge, Richard P. Ieyoub, Atty. Gen., for Applicant.
Jude Christopher Bursavich, Steven Bernard Loeb, David Carlyle Voss, Breazeale, Sachase & Wilson, Baton Rouge, for Respondent.
Nancy C. Dougherty, James Hrdlicka, III, Harry Joseph Philips, Jr., East Baton Rouge, for amicus curiae Board of Regents.
KNOLL, J.
The narrow legal issue before us is whether the Division of Administrative Law (DAL) has subject matter jurisdiction to review a protest of a request for proposal ("RFP") for a contract to lease a public university building for dining services issued under the authority of LA.REV.STAT. ANN. § 17:3361, the "Leases of College and University Properties" law.[1] The resolution of this procedural question implicates the method that a university may employ when it seeks to lease any portion of its grounds or campuses. If we rule that aspects of such a lease involve a procurement under LA.REV.STAT. ANN. § 39:1551-1755, the stringent requirements for the selection of the lowest bidder will be involved. If, on the other hand, LA.REV.STAT. ANN. § 17:3361 alone is applicable, a competitive bid process will be involved, but the lowest bidder provisions will not be applicable. For reasons which follow, we find that the university's use of the special lease provisions authorized by *133 the Legislature in LA.REV.STAT. ANN. § 17:3361 does not involve a procurement and, thus, does not vest the DAL with subject matter jurisdiction.

FACTS AND PROCEDURAL HISTORY
On October 6, 1997, Southern University in Baton Rouge ("Southern"), a public university under the management and control of the Board of Supervisors for Southern University and Agricultural Mechanical College,[2] solicited RFPs for the lease of space for the operation of dining services at its Baton Rouge campus under a statutory provision which authorizes university boards to execute leases "which will further the educational, scientific, research, or public service functions of the [university] board." LA.REV.STAT. ANN. § 17:3361. The proposed lease was for a primary term of five years with five one-year renewal options. The advertisement, inter alia, required the successful proposer to: provide capital investment for improvement of the dining facilities and the Student Union Food Court; to contract with other private entities, such as McDonalds, to provide food court outlets; to invest capital funds of $1,000,000 in the university over the term of the lease; to maintain all of the food service facilities; to pay all costs of the food staff, together with food and equipment purchases; to offer meal plans to all Southern students; and to provide a la carte meals to students, staff and guests of the university.[3] The proposed lease also required a guarantee of an annual minimum lease payment of $650,000 to Southern. In the RFP, Southern agreed that it would collect meal plan fees from the students during registration and that it would remit these funds to the lessee/food service provider.
After receiving proposals from various interested parties, Southern awarded the lease to ARAMARK, a private corporate entity.[4] Thereafter, on October 29, 1997, ABL Management, Inc. & D'Wiley's Services, Inc. ("ABL"), a private joint venture, filed a protest of the RFP because its proposal, apparently the lowest, was rejected. Southern denied ABL's protest. ABL then requested review of Southern's denial of its protest before the DAL. Southern then filed a motion to dismiss ABL's protest, on May 28, 1998, on the ground that the DAL lacked subject matter jurisdiction to hear a matter that dealt with an RFP issued pursuant to LA.REV. STAT. ANN. § 17:3361. The administrative law judge agreed with Southern's argument and granted its motion to dismiss. In reaching its conclusion, the administrative law judge held that although LA.REV. STAT. ANN. § 49:992(E) mandated that the Procurement Code adjudications commence in the DAL, no legislation authorized an administrative hearing in the DAL for activities provided in LA.REV.STAT. ANN. § 17:3361.[5] ABL then sought review *134 in the district court of the administrative law judge's decision, urging that Southern's request for RFPs for supplying food services at its Baton Rouge campus was a procurement which had to proceed with advertisement and selection pursuant to the Procurement Code, LA.REV.STAT. ANN. § 39:1551. As such, it contended that the DAL had subject matter jurisdiction over its protest.
On July 21, 1998, the district court affirmed the decision that the DAL was without jurisdiction to hear a matter that dealt with a RFP issued pursuant to LA. REV.STAT. ANN. § 17:3361. It further found that Southern was simply acting as an agent for the food service contractor when the university collected for the meals at registration that the lessee would later provide. Concurrent with that ruling, the district court also denied ABL's motion to remand the matter to the administrative law judge.
Subsequently, ABL timely filed a devolutive appeal. The Court of Appeal, First Circuit, reversed the judgment of the district court and remanded the matter to the DAL. ABL Mgmt., Inc. & D'Wiley's Servs., Inc. v. Board of Supervisors of Southern University, 98-2711, p. 9 (La. App. 1 Cir. 2/18/00), 752 So.2d 384, 385. Although the appellate court recognized that Southern had the right to enter into a lease pursuant to LA.REV.STAT. ANN. § 17:336., it further held that those portions of the contract which contained "services," i.e., the purchase and distribution of food, constituted procurements subject to the Louisiana Procurement Code, LA.REV. STAT. ANN. §§ 39:1551-1755. ABL Mgmt., Inc., 98-2711, p. 7, 752 So.2d at 388. Accordingly, it held that administrative review as provided in the Procurement Code was proper for the procurement of food services. Thus, the DAL had subject matter jurisdiction to review the merits of ABL's protest.
We granted Southern's writ application to consider the correctness of the appellate court's decision. ABL Mgmt., Inc. & D'Wiley's Servs., Inc. v. Board of Supervisors of Southern University, 00-C-0798 (La.5/12/00), 761 So.2d 556.

ANALYSIS
The crux of ABL's protest is that Southern's RFPs for the acquisition of food services was a procurement subject to the provisions of the Procurement Code; thus, subject matter jurisdiction was proper in the DAL because it had a right to protest Southern's award of this lease through the administrative review provisions of LA.REV.STAT. ANN. §§ 39:1673 (preliminary informal review with the chief procurement officer), 1681 (review authority of the commissioner of administration), 1685(E)(2), 1691(C) and 1692(C) (aggrieved party's right to judicial review of the decision of the commissioner of administration). Southern's position is that the lease did not constitute a procurement and that its award of this lease was made pursuant to LA.REV.STAT. ANN. § 17:3361; thus, the lease was not subject to the administrative review provisions of the Procurement Code.
Relying upon Pacificorp Capital, Inc. v. State, Div. of Admin., Office of State Purchasing, 92-1729, p. 3 (La.App. 1 Cir. 8/11/94), 647 So.2d 1122, 1124, writ denied, 94-2315 (La.11/18/94), 646 So.2d 387, the appellate court reasoned that the specific provisions of LA.REV.STAT. ANN. § 17:3361 only supercede "any conflicting statutory provisions of the Louisiana Procurement Code." ABL Mgmt., Inc., 98-2711, p. 5, 752 So.2d at 387 (emphasis in original). Finding no conflict between LA.REV.STAT. ANN. § 17:3361 and the Louisiana Procurement Code, the appellate court held that the latter provisions were applicable to the instant case. In its resolution of this issue, the appellate court bifurcated the RFP. On one hand, it found that Southern could award a lease under LA.REV.STAT. ANN. § 17:3361 without being bound by the strictures of the Louisiana Procurement Code and the review procedures detailed therein. On the other hand, the appellate *135 court further held that the food services portion of the proposal could only be awarded in conformity with the Louisiana Procurement Code. As such, it effectively determined that this latter award had to be made to the lowest responsible proposer in conformity with the Procurement Code and Southern's failure to so award was subject to administrative review.
It is well established that when a statute is clear and free of ambiguity, it must be given effect as written. Hebbler v. New Orleans Fire Dept., 310 So.2d 113 (La.1975). Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. LA.REV. STAT. ANN. § 1:3. When interpreting a statute, the court should give it the meaning the Legislature intended. Cat's Meow v. City of New Orleans, 98-0601 (La.10/20/98), 720 So.2d 1186, 1198. It is presumed that every word, sentence or provision in the statute was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. Bunch v. Town of St. Francisville, 446 So.2d 1357, 1360 (La. App. 1 Cir.1984). Conversely, it will not be presumed that the Legislature inserted idle, meaningless or superfluous language in the statute or that it intended for any part or provision of the statute to be meaningless, redundant or useless. Id. The Legislature is presumed to have enacted each statute with deliberation and with full knowledge of all existing laws on the same subject. Theriot v. Midland Risk Ins. Co., 95-2895 (La.5/20/97), 694 So.2d 184, 186. A statute's meaning and intent is determined after consideration of the entire statute and all other statutes on the same subject matter, and a construction should be placed on the provision in question which is consistent with the express terms of the statute and with the obvious intent of the Legislature in its enactment of the statute. Where it is possible, the courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions. Bunch, 446 So.2d at 1360. Moreover, when a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written. Cat's Meow, 720 So.2d at 1198. A construction of a law which creates an inconsistency should be avoided when a reasonable interpretation can be adopted which will not do violence to the plain words of the statute and will carry out the Legislature's intention. State v. Cazes, 262 La. 202, 263 So.2d 8 (1972). Ultimately, it is clear that the law provides that the statute be accorded a fair and genuine construction. Louisiana Health Serv. v. Tarver, 93-2449 (La.4/11/94), 635 So.2d 1090, 1094. A reasonable construction in light of the statute's purpose is what is required. J.M. Brown Constr. Co. v. D & M Mech. Contr., Inc., 275 So.2d 401 (La.1973).
The statutory authority for Southern to lease is found in LA.REV.STAT. ANN. § 17:3361 which provides, in pertinent part:
A. Each board may grant leases of any portion or portions of the grounds or campus of any college or university or of other immovable property under its supervision and management, for a term not to exceed ninety-nine years for each lease, to any of the following:
* * *
(5) A private entity, provided such private entity shall be obligated under the terms of the lease agreement to construct improvements on the leased premises which will further the educational, scientific, research, or public service functions of the board.
* * *
B. Each board may permit the lessees to erect, construct, and maintain thereon fraternity or sorority houses or homes, student centers, facilities for religious worship and instruction, armories, storehouses, *136 and other structures. Contracts entered into by a private lessee for the performance of work on the leased premises or the erection, construction, or maintenance of improvements on the leased premises shall not constitute public works contracts.
* * *
E. The provisions of R.S. 39:1643 and Part I of Chapter 10 of Title 41 of the Louisiana Revised Statutes of 1950 shall not be applicable to agreements authorized by this Part.[6]
On the other hand, LA.REV.STAT. ANN. § 39:1556 defines procurement as:
[T]he buying, purchasing, renting, leasing, or otherwise obtaining any supplies, services, or major repairs. It also includes all functions that pertain to the obtaining of any public procurement, including description of requirements, selection, and solicitation of sources preparation and award of contract, and all phases of contract administration.
From the outset, it is immediately observable that these two statutes address two very different activities. LA.REV.STAT. ANN. § 17:3361 treats the legislatively created right of public colleges and universities to lease portions of their property. On the other hand, procurement under the provision of LA.REV.STAT. ANN. § 39:1556 involves an expenditure of State funds. Only the Procurement Code has a well developed system for the resolution of contract disputes and delineates a multi-level administrative review process;[7] the Leases of College and University Properties law does not provide for a special review process.
It is important that we first examine the general concept of lease since Southern sought to address the university's need for food services through the legislatively crafted lease provisions of LA.REV.STAT. ANN. § 17:3361. Such inquiry not only provides the foundation for our consideration of the issue presented, but also shows how the court of appeal fell into error.
A lease is a synallagmatic contract whereby the owner of the thing leased grants to the lessee the enjoyment of the thing for a certain time. LA. CIV. CODE ANN. art. 2669; Kizer v. Burk, 439 So.2d 1051 (La.1980). Cause is the reason why a party obligates himself. LA. CIV. CODE ANN. art. 1967. There is implicit in lease contracts the presumption that one of the causes of the lease contract, if not the threshold cause, is that the lessee will be able to use the leased object for which it was intended. See LA. CIV.CODE ANN. art. 2711; Phillip DeV. Claverie, et al., Comment, The Louisiana Law of Lease, 39 TUL. L.REV. 798, 808 (1965).[8]
We next examine the wording of LA.REV. STAT. ANN. § 17:3361. It is clear that the statute requires the private entity that leases a public college or university facility to provide a service that furthers at least one of the essential functions of the institution of higher learning. As enunciated in LA.REV.STAT. ANN. § 17:3361(A)(5), such function must include either "the educational, scientific, research, or public service" *137 activity of the institution. However, not only must an essential service be provided, the private entity must "construct improvements on the leased premises" which further such service. Id. Thus, it is evident that this requirement evinces the intent of the Legislature to provide capital improvements to Louisiana's colleges and universities from the private sector, without the involvement of funds from the public fisc. In the present case, such an arrangement would not only yield ARAMARK a lease of space for the operation of dining services at Southern's Baton Rouge campus, it would further provide Southern with a valuable core service and more importantly would infuse private money for the construction of capital improvements on Southern's campus.
After reading LA.REV.STAT. ANN. § 17:3361 together with the codal articles relative to the contract of lease, we find that the appellate court's analysis creates an artificial bifurcation which interdicts the essential element of cause for ARAMARK's entry into this contract of lease. As Southern adroitly points out, the appellate court's interpretation of LA.REV.STAT. ANN. § 17:3361 could lead to the situation where ARAMARK would hold a lease on immovable property on Southern's campus and another private entity would hold the food service contract through the procurement process. Likewise, Southern would be in the untenable position of having awarded a contract to a successful proposer for the "services" aspect and being unable to allow this successful proposer to have access to the premises to perform the services because another private entity holds a lease on the immovable property. Such a result would lead to absurd results and would effectively eliminate any incentive that a potential private entity might have to recoup its investment through the sale of services envisioned in LA.REV.STAT. ANN. § 17:3361. See State v. Louisiana Riverboat Gaming Comm'n, 94-1872, 94-1914 (La.5/22/95), 655 So.2d 292, 302 (holding that courts should avoid constructions which render legislation absurd; rather, statutes must be interpreted as to render their meaning rational, sensible, and logical). Moreover, the appellate court's interpretation eviscerates LA.REV. STAT. ANN. § 17:3361 and fails to consider the food service as an integral element of ARAMARK's cause (reason) for entering into this contract for the lease of space for the operation of dining services. This was the quid pro quo that formed the basis for the contract between Southern and ARAMARK. Accordingly, we find that the appellate court erred as a matter of law in finding that the food service element of this RFP was subject to the Procurement Code and that the administrative law judge had subject matter jurisdiction to hear ABL's protest.
In disposing of ABL's remaining arguments, we further find that the appellate court erred when it found that Southern's collection of student funds for meal plans during registration converted that money into public funds. Our reasons are twofold. First, it is clear that this lease agreement under LA.REV.STAT. ANN. § 17:3361 is not a procurement. See LA. REV.STAT. ANN. § 39:1556 (defining procurement). Under the terms of the lease agreement, Southern does not buy, purchase, rent, lease or otherwise obtain anything. Instead, it alienates an element of ownership through the grant of a lease to ARAMARK. In stark contrast to a procurement, the university receives lease funds from ARAMARK; as provided in the lease agreement, ARAMARK guarantees the payment of at least $650,000 to Southern. In addition, Southern further benefits from the capital improvements required by statute, is insulated from the costs of providing food services, and is shielded from the risk of not turning a profit on the food services. There simply was no expenditure of university funds as a result of this statutorily sanctioned lease arrangement. See Talbot & Talbot, Inc. v. Louisiana State Univ. & the Bd. of Supervisors of La. State Univ., 99-0251 (La.App. 1 Cir. 3/31/00), 764 So.2d 975, writ denied, *138 00-1226 (La.6/2/00), 763 So.2d 607 (holding that the sale or alienation of university property is not an acquisition of goods or services through the expenditure of public funds). Second, it is likewise clear that Southern acts as ARAMARK's mandatary when it collects meal plan payments from its students. A mandate is a contract by which the principal confers authority on the mandatary to transact one or more affairs for the principal. LA. CIV.CODE ANN. art. 2989. In this instance, although the students could have paid ARAMARK directly, Southern agreed in the lease that it would collect meal plan payments and disburse them to ARAMARK. Such a legal relationship does not convert student money to public funds. We further find no merit to ABL's contention that public funds are implicated because some of the Southern students are scholarship recipients. We note that Southern pointed out in oral argument that scholarship funds are disbursed to the student. If a student spends scholarship money for meal plan payments, it is clear that such funds are drawn from student accounts, not the university's general fund. Finally, we find no merit to ABL's reliance on Southern's 1997-98 proposed operating budget[9] to buttress its procurement argument before us. We note that the operating budget pre-dated Southern's request for the present RFP. As noted herein, Southern's use of a lease to address its dining services obligation to its students, faculty, and visitors dramatically altered when it utilized LA.REV.STAT. ANN. § 17:3361. Instead of expending funds for this service, Southern contracted to receive lease payments and benefit from capital improvements that the lessee would provide.[10]

DECREE
For the foregoing reasons, the judgment of the appellate court is reversed and set aside. The judgment of the district court is reinstated.
REVERSED.
NOTES
[1] Only this limited procedural issue is before us; we do not discuss the merits of ABL's protest of the RFP.
[2] Pursuant to LA. CONST. art 8, § 7(A), the Board of Supervisors of Southern "shall supervise and manage the institutions, statewide agricultural programs, and other programs administered through its system."
[3] The RFP further required the successful lessee to secure a liquor permit, provide a first-class catering service, provide and maintain motor vehicles to transport food and beverages, and comply with personnel and insurance specifications.
[4] Southern reserved the right to reject any and/or all proposals. It also stated that all proposals would be evaluated along with all others on the basis of criteria defined in the RFP. The RFP further stated that the award of the contract would be given to the responsible proposer submitting a responsive proposal according to the criteria given in the RFP and in the best interest of the Southern. The RFP also provided that the evaluation and selection process would be conducted by a committee designated by Southern.
[5] Noting that an attorney general's opinion is only advisory, Branton v. Parker, 233 So.2d 278 (La.App. 1 Cir.), writ denied, 256 La. 359, 236 So.2d 497 (1970), the administrative law judge referenced Attorney General Opinion 97-385. In that opinion, the Attorney General opined that the lease of space by a university to a contractor under LA.REV.STAT. ANN. § 17:3361 is appropriate for the operation of university dining services.
[6] LA.REV.STAT. ANN. § 39:1643 provides for instances where the State is the lessee. Part I of Chapter 10 of Title 41 of the Louisiana Revised Statutes of 1950 addresses instances where the State is a lessor. We further note that LA.REV.STAT. ANN. § 17:3361(A)(5) was amended by 1999 La. Acts 167 to add "and provided further that the private entity has been selected pursuant to a competitive bid or competitive process."
[7] See LA.REV.STAT. ANN. §§ 39:1673 (preliminary informal review with the chief procurement officer), 1681 (review authority of the commissioner of administration), 1685(E)(2), 1691(C) and 1692(C) (aggrieved party's right to judicial review of the decision of the commissioner of administration).
[8] Conversely, if the lessee makes use of the property in a manner that was not intended at the time of the lease, the lessor may dissolve the lease and hold the lessee liable for losses that may have been sustained and for rent. LA. CIV.CODE art. 2711.
[9] The proposed budget was signed on August 14, 1997, more than a year prior to this RFP request.
[10] Although Southern's 1998 legislative appropriation was also filed by ABL as a piece of documentary evidence in the district court, we are only able to make the general observation that Southern received public funds from the State of Louisiana.