CARAWAY, J.
In this case, the local taxing authority seeks to impose a sales and use tax on a “sale of services” as defined in our law involving club membership dues for access *1156 to the appellant’s commercial retail outlet store. The trial court held that the dues transaction was taxable under the law. From our statutory interpretation of the sales and use tax provision, we agree and affirm the trial court’s ruling.

Facts

The Caddo-Shreveport Sales and Use Tax Commission (“Commission”) conducted a sales and use tax audit of all Sam’s Club stores in Caddo Parish for the periods July, 1995 through June, 1999. Based on its audit, the Commission issued an audit assessment letter dated June 29, 2000. All Sam’s Club stores were owned and operated by Wal-Mart Stores, Inc. between July, 1995 and January, 1997. Thereafter, Sam’s East, Inc., a wholly owned subsidiary of Wal-Mart Stores, Inc., owned and operated the stores. On September 12, 2000, Wal-Mart Stores, Inc. (hereinafter “Wal-Mart” or “Sam’s Club”) remitted $451,588.07 to the Commission, under protest. The amount represented sales and use taxes, interest and penalties assessed on the sales price of Sam’s Club membership fees during the audit period and collectible by the Commission under the applicable provisions of the Caddo-Shreveport sales and use tax ordinances governing “sales of services.” Wal-Mart filed suit to recover this amount on October 12, 2000.
Access to shopping at Sam’s Club stores is restricted to Sam’s Club members. Non-members are not allowed access to a store unless 12accompanied by a member. Sam’s Club advertises “exceptional value on name brand merchandise at ‘members-only’ prices,” and promotes itself as “the nation’s leading ‘members-only’ warehouse.”
Examples of Sam’s Club services include member checks, travel club services, internet access, auto buying program, boat and recreational vehicle buying program, health services discount network, residential long distance telephone, time management seminars and software training. Sam’s Club’s advertising states:
Better Benefits. — One of the secrets of our world-class Member Benefits package is that utilizing even one can save you more than the cost of your low annual membership fee. Plus, you’ll enjoy substantial savings on services that enhance your quality of life or business throughout the year.
Sam’s Club membership guidelines provide as follows:
Membership is subject to any and all rules adopted by SAM’S Club and these rules may be amended from time to time without notice.
Membership cards are non-transferable. Sales tax will be charged on membership where applicable. Memberships may be terminated at SAM’S Club’s discretion. Your membership card is valid at all SAM’S Club locations. Please show your card when entering a SAM’S Club and when checking out at a register. Members are required to present their receipt when exiting. Report a lost or stolen card to your local SAM’S Club Membership Desk.
The primary member must authorize renewal or cardholder changes, including additions or deletions, and is responsible for the account. You will receive a renewal notice by mail each year. You may remit your renewal fee by mail or renew at any SAM’S Club. Members approved for SAM’S Club credit will automatically be billed for their renewal. YOU WILL NOT RECEIVE NEW CARDS EACH YEAR.
Members may purchase with checks by showing the appropriate ID, including driver’s license.
|3We welcome your children and up to two guests. However, both must stay with you and only you may purchase *1157 items. Parents are responsible for their children and should not put them in shopping baskets. SAM’S Club may refuse entry to anyone at our discretion. Members are responsible for any packages opened or damaged by their guests, children, or themselves.
SAM’S Club Elite SM Membership is for the primary member and the complimentary spouse cardholder only. Please see the SAM’S Club EliteSM Benefit Booklet for more details on this exclusive member program.
After a hearing on cross motions for summary judgment, the trial court granted summary judgment in favor of the Commission and dismissed Wal-Mart’s petition with prejudice. It further ordered the release from escrow of all sums paid under protest, and distribution to the appropriate taxing authorities. Noting that Sam’s Club described itself as an “exclusive club,” the trial court’s written reasons interpreted the statute dealing with taxable sales of services for the privilege of access to clubs to include Sam’s Club stores, and construed the statute to include shopping clubs. It is from this judgment that Wal-Mart appeals.

Discussion

Louisiana’s sales and use tax law defines “sales of service” in Section 301(14) of the law. La. R.S. 47:301(14). Taxable services listed in the law include fees for, among other things, hotel rooms, storage and parking lot privileges, laundry services, and repairs to automobiles and other tangible personal property. Section 302(C) then levies a tax on such “sales of service.” La. R.S. 47:302(C). The particular activity in this dispute, which is claimed by the Commission to be included as a taxable sale of services | ¿under Section 301(14)(b)(i) (hereinafter the “Statute”),[1] is defined as follows:
The sale of admissions to places of amusement, to athletic entertainment other than that of schools, colleges, and universities, and recreational events, and the furnishing, for dues, fees, or other consideration of the privilege of access to clubs or the privilege of having access to or the use of amusement, entertainment, athletic, or recreational facilities; but the term “sales of services” shall not include membership fees or dues of nonprofit, civic organizations, including by way of illustration and not of limitation the Young Men’s Christian Association, the Catholic Youth Organization, and the Young Women’s Christian Association.
Sam’s Club argues that its store memberships are not taxable services within the scope and purpose of the Statute. It claims that its no frills, warehouse-style store caters to buyers of products in bulk, and such business does not represent a sale of services. Moreover, the business is essentially a “commercial retail merchandise outlet” and therefore, according to Sam’s Club, not a club within the intent of the Statute. Specifically, Sam’s Club argues that the Statute’s overall language confines its application to organizations that primarily sell or provide pleasurable, social, recreational and athletic experiences.
The starting point for interpretation of any statute is the language of the statute itself. Cat’s Meow, Inc. v. City of New Orleans through Dep’t of Finance, 98-0601 (La.10/20/98), 720 So.2d 1186. When a law is clear and unambiguous and *1158 its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in ^search of the intent of the legislature. La. C.C. art. 9.
Sam’s Club memberships are allegedly taxable because of the language of the Statute which includes as a taxable service, “the furnishing, for dues, fees, or other consideration of the privilege of access to clubs.” Addressing the initial question of whether Sam’s Club is a club, the dictionary defines “club” as “a group of people organized for a common purpose.” The American Heritage Dictionary of the English Language, Fourth Edition. In one sense, Sam’s Club and its parent company, Wal-Mart, may be considered the principal organizers of the Sam’s Club business, since they first planned and built the commercial facility. Nevertheless, members of Sam’s Club are eventually recruited and organized into the business structure. Their participation is vital to the business. A common purpose of the members is to have access to a no frills place of business for making purchases of products sold for cheaper prices in bulk. Through their membership fees, the members pay for access to a special shopping facility that is not open to the general public. Although the members may not be acquainted with one another, or have designated times for meetings at the facility, this does not preclude their collective memberships from constituting a club. Similarly, members of health clubs may not be acquainted with all of the other members of the health club, or attend regularly scheduled meetings. Yet, Sam’s Club’s argument necessarily concedes that the fees or dues for such clubs are taxable under the Statute. See, e.g., City of Lake Charles v. Dave’s Swedish Spa Resort, 441 So.2d 50 (La.App. 3d Cir.1983); writ denied, 444 So.2d 120 (La.1984).6 We therefore conclude from the common meaning of the word “club” as used in the Statute, that the membership of Sam’s Club constitutes a club.
Sam’s Club is a commercial retail merchandise outlet where individual sales to members occur with sales tax applicable to those transactions of non-exempt retail purchasers. Before those transactions can occur, however, the member acquires the privilege of access to the facility through a separate transaction, for the payment of a membership fee. This transaction, required for access to and use of the facility, is not unlike other taxable transactions which the legislature has defined as the sale of services. The legislative definitions do not necessarily involve tangible personal property and the idea of service can be broad. A parking lot privilege furnishes access to an immovable facility and is a “sale of services,” even though no attendant need be present at the parking lot to provide service to the customer. Thus, from the context of “sales of services” under Louisiana’s sales and use tax law, we cannot say that the legislative choice to tax this membership transaction produces an absurd consequence that is foreign to the general taxing scheme of the law.
We therefore find no contextual absurdity in this choice of taxation for “the furnishing ... of the privilege of access to clubs,” as a sale of services. Despite the diversity of these transactions as defined in the various categories for “sales of services,” Sam’s Club argues for a narrowing of the “access to clubs” provision because other examples of taxable services listed in the Statute involve amusement, entertainment, |7athletics or recreational facilities. According to Sam’s Club, the discussion of those items serves to modify and limit the taxation of club membership dues. For purposes of this summary judgment review, the Sam’s Club store is apparently not a place of amusement or entertainment and clearly has no athletic or recreational facilities.
*1159 In considering Sam’s Club’s argument, we find the source statute of the current provision, Acts 1948, No. 9, § 6, helpful. The original enactment contained a slightly different sentence structure and none of the exempting language now included in the Statute. The “access to clubs” phrase of the 1948 Act is identical to the current law as shown by the following:
The sale of admissions to places of amusement and to athletic, entertainment, or recreational events, and the furnishing, for dues, fees, or other consideration, of the privilege of access to clubs or the privilege of having access to or the use of amusement, entertainment, athletic or recreational facilities.
The original version clearly delineates through sentence structure, (i) the “sale” of admissions to amusement and athletic/recreational events; “and” (ii) the onerous “furnishing” of either the privilege of access to clubs “or” the privilege of access or use of amusement, entertainment, athletic or recreational facilities. The actual activities or transactions addressed by the Statute are also more diverse than Sam’s Club’s argument would suggest. The admission to an amusement is a one-time event that might have no connection whatsoever with an athletic event or recreational facility. The payment of dues for a club suggests longer term involvement, and not payment for a one-time event.
| ¡¡From this review of the original enactment, the “sale” and “furnishing” clauses of the Statute certainly indicate an intent for the taxing of different transactions which need not have such close affinity as argued by Sam’s Club. This brings us to the main phrase of the Statute upon which Sam’s Club’s argument must rest, “the furnishing, for dues, fees or other consideration, of the privilege of access to clubs or the privilege of having access to or the use of amusement, entertainment, athletic, or recreational facilities.” This provision has not changed since the 1948 enactment.
The sentence structure for this provision repeats the phrase, “the privilege,” twice and separates the two by the disjunctive coordinating conjunction, “or.” In common usage, this means that two distinct, alternative privileges are addressed. See, e.g., Blackburn v. National Union Fire Ins. Co. of Pittsburgh, 00-2668 (La.4/3/01), 784 So.2d 637; Duncan v. State, Dep’t of Transp. and Dev., 615 So.2d 305 (La.1993). Clearly, there may be significant distinctions between the activities covered by the two privilege phrases. Just as a one-time fee for use of a recreational facility may not provide club membership, club membership may not involve the use of a recreational facility. Likewise, the fact that the two privilege phrases can overlap in coverage of the same activity, e.g., a health club membership, does not limit the legislative intent of these provisions only to those activities covered by both phrases. If so, only the second privilege phrase of the Statute need be used, since it alone would cover the narrow category of clubs argued by Sam’s Club. Such interpretation, however, would violate the principle set forth in ABL Management, Inc. v. Bd. of Supervisors of Southern Univ., 00-0798 (La.11/28/00), 773 So.2d 131:
... It is presumed that every word, sentence or provision in the statute was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. Conversely, it will not be presumed that the Legislature inserted idle, meaningless or superfluous language in the statute or that it intended for any part or provision of the statute to be meaningless, redundant or useless.
Id. at 135, citation omitted.
In summary, the language of the “access to clubs” provision is clear and unambigu *1160 ous. It does not lead to an absurd consequence when considered in the context of the general taxing authority for “sales of services.” Likewise, in the more specific context of the Statute, its meaning is clear and unambiguous in relation to the other access privileges addressed in the Statute and is made independent of those privileges by the use of the disjunctive conjunction.
Next, Sam’s Club argues that the trial court erred in allowing the Commission to file the affidavit of a marketing expert, who gave an opinion regarding the entertainment value of the shopping experience at Sam’s Club. Since neither the trial court nor this court has interpreted the Statute in reliance upon the fact that Sam’s Club is a place of entertainment or amusement, the testimony of the Commission’s expert is not relevant to the question of law presented by this appeal. This assignment of error is without merit.
The next argument raised by Sam’s Club asserts that the Commission is bound by a 1992 decision of the Louisiana Board of Tax Appeals (hereinafter the “BTA”), BTA Docket No. 3696 (1992 WL 532696). The | mparties to the action were Wal-Mart Stores, Inc. and the Louisiana Department of Revenue and Taxation. The BTA’s judgment was “that the fees for memberships charged by [Wal-Mart] for membership in its Sam’s Clubs are not taxable” under Louisiana sales and use tax law. After the rendition of this judgment, which is not appealed, the State discontinued taxation of Sam’s Club membership fees.
Sam’s Club’s position is based upon the legislature’s power to define the extent of sales and use taxes, including sales of services. La. Const, art. VI, § 29(A); B.P. Oil Co. v. Plaquemines Parish Gov’t, note 1 supra. The local government may not, through a local ordinance, tax a sale of services unless that sale of services has been first defined by the legislature. Sam’s Club argues that the Commission is now imposing a sales tax on the same type of transaction and the same taxpayer that the State of Louisiana may no longer tax following the 1992 litigation between the State of Louisiana and Wal-Mart. While this may be true, it is not the result of the legislature’s failure to extend the taxing power to dues on the privilege of access to clubs, as interpreted above. It would only be true between the State of Louisiana and Wal-Mart because of the principle of res judicata, depending upon the final resolution of those parties’ dispute in 1992. The Department of Revenue still has the power to tax another company collecting store club membership dues under the Statute. Therefore in this dispute, the local government has not exceeded the legislature’s taxing authority. Moreover, as noted by the court in City of Lake Charles v. Dave’s Swedish Spa Resort, supra., the principles of res judicata and collateral estoppel do not apply [^regarding a prior judgment of the BTA, since the parties to that litigation are different from the present parties. This assignment of error likewise is without merit.
Finally, without citation to any authority, Sam’s Club argues that because it has relied for years on the 1992 BTA judgment, the Commission’s imposition of penalty and interest, in addition to the sales and use tax assessed, is unwarranted and unfair. We have examined the applicable provisions of the Caddo Parish Sales and Use Tax Ordinance, and the legislative statutes referred to therein, as well as the jurisprudence interpreting those statutes, and have found no provisions requiring the court to remit the interest and penalty imposed by the Commission. Additionally, we note that under URCA Rule 2-12.4, the court may consider as abandoned any specification or assignment of error which has not been briefed. Miller v. Miller, 35,934 (La.App.2d Cir.5/8/02), 817 So.2d *1161 1166; Brown v. Ruskin Mfg. Co., 33,015 (La.App.2d Cir.4/5/00), 756 So.2d 667. Accordingly, the award for interest and penalties is affirmed.

Conclusion

For the reasons expressed herein, the judgment of the trial court is affirmed at appellant’s cost.
AFFIRMED.

. The Caddo Parish taxing ordinance mirrors the Statute. Local taxing authorities may enforce collection of sales taxes "in the manner provided for collection of taxes due the state.” La. R.S. 33:2841; see also, La. Const. Art. VI, § 29(A). We will therefore focus on the interpretation of the Statute. See, B.P. Oil Co. v. Plaquemines Parish Gov’t, 93-1109 (La.9/6/94), 651 So.2d 1322, 1333.