# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 24-412


**REEF EXPLORATION, INC.**

**VERSUS**

**BOBBIE JEAN BUSBY PATIN, ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2005 5429
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## SHANNON J. GREMILLION
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Shannon J. Gremillion, Charles G. Fitzgerald, and Guy E. Bradberry, Judges.


**REVERSED AND REMANDED.**

Stephen Douglas Baker
Attorney at Law
412 W. University Ave., #101
Lafayette, LA 70506
(337) 235-8298
COUNSEL FOR DEFENDANTS/APPELLANTS:
    Therese Holleman, Trustee Robert Thornton Holleman Trust, et al.

Patrick S. Ottinger
Ottinger, Hebert, LLC
P.O. Drawer 52606
Lafayette, LA 70505-2606
(337) 232-2606
COUNSEL FOR DEFENDANTS/APPELLANTS:
    Therese Holleman, Trustee Robert Thornton Holleman Trust, et al.

Valerie V. Guidry
Ottinger Hebert, LLC
P.O. Drawer 52606
Lafayette, LA 70505-2606
(337) 232-2606
COUNSEL FOR DEFENDANT/APPELLANT:
    Lafayette City-Parish Consolidated Government

Michael J. Remondet, Jr.
Juilette Busby Wade
Jeansonne & Remondet
P.O. Box 91530
Lafayette, LA 70509
(337) 237-4370
COUNSEL FOR DEFENDANT/APPELLEE:
    Bobbie Jean Busby Patin

Edward D. Hughes
Jonathan A. Moore
Savannah W. Smith
Taylor, Porter, Brooks & Phillips, L.L.P.
P. O. Box 2471
Baton Rouge, LA 70821-2471
(225) 387-3221
COUNSEL FOR DEFENDANT/APPELLEE:
    Bobbie Jean Busby Patin

**John T. Kalmbach**
**J. Bert Babington**
**Cook, Yancey, King & Galloway**
**A Professiona Law Corporation**
**P.O. Box 22260**
**Shreveport, LA 71120-2260**
**(318) 221-6277**
**COUNSEL FOR AMICUS CURIAE:**
       **Louisiana Oil & Gas Association**

**Reef Exploration, Inc.**
**1901 N. Central Expressway**
**Suite 300**
**Richardson, TX 75080**
**IN PROPER PERSON:**
       **Reef Exploration, Inc.**

**GREMILLION, Judge.**

Reef Exploration, Inc. (Reef), a well operator, commenced this concursus proceeding for the purpose of allowing landowners and the holder of a mineral servitude to adjudicate their interests in the production from the well. The trial court granted summary judgment to the mineral servitude holder, and the landowners filed this appeal. For the reasons that follow, we reverse and remand the matter for proceedings consistent with this opinion.

## FACTS AND PROCEDURAL POSTURE

On April 9, 1994, appellee, Bobby Jean Busby Patin, reserved a mineral servitude over 7.94 acres in the City of Lafayette that she sold to B.J. Patin, Inc. This servitude did not allow her access on the property to drill but reserved the right to directionally drill into the boundaries of the property. This property was subdivided, and the appellants acquired ownership within the subdivision. Those appellants are Therese Perry Joan Landreneau Holleman, as Trustee of the Robert Thornton Holleman Trust; Perry Landreneau Vidrine Holleman; Magnus J. Arceneaux; Robin Arceneaux; Donna F. Thomas; Robert E. Rice; Jennifer H. Rice; Succession of Raymond T. Sutton, Jr.; Nancy B. Sutton; Timothy Wayne Howard, Sr.; Alison Reneé Benoit Howard; Chris Robbins; David Robbins; Mark Hanna; Tanya Hebert Hanna; Prent H. Kallenberger; Molly H. Kallenberger; Ricardo Leoni; Jo Ellen W. Leoni; John P. Carpenter; and Kay S. Carpenter. The Lafayette City-Parish Consolidated Government (LCP) also acquired an interest by virtue of dedication of the streets.

On October 18, 2001, the Louisiana Office of Conservation issued an order establishing the BOL M3 RL SUA compulsory drilling unit, Broussard Field, Lafayette Parish, Louisiana (the unit), which included the 7.94 acres burdened by Ms. Patin's mineral servitude. Reef was the designated operator of the unit. Reef

applied for a permit to drill the John Montesano Well No. 1 (the well) as the unit well on February 12, 2004. Reef's permit was granted on February 17, 2004.

Drilling commenced (the well was "spudded") on March 29, 2004. All parties acknowledge that the drilling did not take place within the confines of the unit and was directionally bored into the unit. All the defendants to the concursus made written demand on Reef to pay them royalties. Faced with these conflicting demands, Reef invoked the concursus on October 19, 2005. It paid an initial sum into the registry of the court and made subsequent payments.

Appellants and appellee filed competing motions for summary judgment. In their motion, appellants raised the principal issue in the case: whether appellee's mineral servitude was prescribed for nonuse pursuant to La.R.S. 31:28–41[1] because the well was spudded outside the unit. Because the drill did not penetrate the boundary of the unit until April 9, 2004, twenty-six hours after appellee's servitude prescribed, appellants argue they are entitled to the royalties derived from the minerals.

In support of their motion, appellants, including LCP, annexed the affidavit of Laura Klein, a petroleum engineer with Reef, who was the well's drilling engineer. Ms. Klein attested that the well was spudded on March 29, 2004. Based upon the drilling reports and directional surveys, the drill penetrated the unit at 2:00 a.m. on April 9, 2004. These reports and surveys were not attached to the Klein affidavit. According to appellants, operations in the unit did not occur within the ten-year period required to interrupt the nonuse prescriptive period. Appellants argue that because appellee's servitude prescribed for nonuse, all royalties should accrue to them.

---

[1] The Louisiana Mineral Code is found in Title 31 of the Louisiana Revised Statutes. Because the sections in Title 31 comprise articles of the Mineral Code, we will cite them as part of the revised statutes but refer to them as "Articles."

Appellee's motion for summary judgment was supported by her affidavit, which attested that the attached copy of the sale to B.J. Patin, Inc., a mineral lease, and the demand letter she sent to Reef were true and correct. She also annexed the affidavit of Jeff Chatelain, an independent land man from Baton Rouge, who researched the unit and attested to the authenticity of copies of those documents. Lastly, appellee attached an excerpt from John M. McCollam, *A Primer on the Practice of Mineral Law under the new Louisiana Mineral Code*, 50 Tul.L.Rev. 732 (1976).

Appellee also filed an opposition to appellants' motions. In that opposition, appellee moved to strike the Klein affidavit because it was not based upon personal knowledge and because the documents she referenced in the affidavit were not attached as required by La.Code Civ.P. art. 967(A).

Appellee's objection was raised at the hearing on the motions. The trial court granted appellee's motion to strike the Klein affidavit on the grounds that it did not comply with Article 967, though it is not clear from the record whether this was for failing to attach the referenced documents or simply from lack of personal knowledge. However, the trial court also found that whether operations did not occur within the unit was irrelevant; prescription was interrupted because good faith operations had commenced at the unit well pursuant to La.R.S. 31:29. Summary judgment was granted in favor of appellee, and this appeal followed.

## ASSIGNMENTS OF ERROR

The landowner appellants assign the following as errors:

A. The trial court erred in failing to apply the express requirements of article 30 of the Louisiana Mineral Code;

B. The trial court erred in giving controlling effect to the regulatory classification of the well as assigned by the Louisiana Office of Conservation;

C. The trial court erred in failing to place the burden of proof on Appellee to demonstrate a use of the mineral servitude prior to the date on which the mineral servitude prescribed;

D. In the alternative, and if this Honorable Court does not place the burden of proof on Appellee to demonstrate a use of the mineral servitude prior to the date on which the mineral servitude prescribed, the trial court erred in refusing to receive into evidence the Affidavit of Reef s Drilling Engineer which establishes without contradiction the date on which the borehole of the Montesano Well "cut," penetrated or traversed the exterior boundary of the BOL M3 RL SUA; and

E. The trial court erred in failing to adopt the argument or position that favors extinguishment of the mineral servitude by prescription.

## ANALYSIS

### *Summary Judgment*

The typical vehicle for raising the issue of prescription is via an exception, but Louisiana courts allow the issue to be raised via summary judgment. *Hogg v. Chevron USA, Inc.*, 09-2632 (La. 7/6/10), 45 So.3d 991. When prescription is raised in a motion for summary judgment, the same standards of appellate review are employed as in any other summary judgment case. *Id.*

The grant and appellate review of motions for summary judgment are governed by La.Code Civ.P. arts. 966 and 967. "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

> We review a district court's grant of summary judgment *de novo*, viewing the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant. Summary judgment is warranted only if "there is no genuine issue as to material fact and [ ] the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(C)(1). In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the

4

truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor.

*Hines v. Garrett*, 04-806, p. 1 (La. 6/25/04), 876 So.2d 764, 765. If reasonable people could only arrive at one conclusion, no genuine issue exists. *Wroten v. Ferriday Auto Ventures, LLC*, 20-387, 20-102 (La.App. 3 Cir. 12/16/20), 310 So.3d 621, *writ denied*, 21-85 (La. 3/9/21), 312 So.3d 585. "A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of a legal dispute." *Id.* at 624.

If the mover will not bear the burden of proof at trial on the issue before the court on the motion for summary judgment, the mover's burden on the motion is:

to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that mover is not entitled to judgment as a matter of law.

La.Code Civ.P. art. 966(D)(1).

*Bobb v. Sylvester*, 23-109, pp. 3–4 (La.App. 3 Cir. 11/15/23), 374 So.3d 1117, 1119–20.

Article 967(A) governs the form and content of supporting and opposing affidavits:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. The supporting and opposing affidavits of experts may set forth such experts' opinions on the facts as would be admissible in evidence under Louisiana Code of Evidence Article 702, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.

*Prescription of nonuse*

Louisiana law does not countenance the permanent severance of the ownership of land and the minerals beneath it. *Frost-Johnson Lumber Co. v.*

5

*Salling's Heirs*, 150 La. 756, 91 So. 207 (1920). Rather, we recognize the creation of a mineral servitude, which "is the right of enjoyment of land belonging to another for the purpose of exploring for and producing minerals and reducing them to possession and ownership." La.R.S. 31:21. The owner of a mineral servitude "is entitled to use only so much of the land as is reasonably necessary to conduct his operations[]" and "is obligated, insofar as practicable, to restore the surface to its original condition at the earliest possible time." La.R.S. 31:22.

A mineral servitude is extinguished by:

(1) prescription resulting from nonuse for ten years;

(2) confusion;

(3) renunciation of the servitude on the part of him to whom it is due, or the express remission of his right;

(4) expiration of the time for which the servitude was granted, or the happening of the dissolving condition attached to the servitude; or

(5) extinction of the right of him who established the servitude.

La.R.S. 31:27.

Prescription of nonuse "commences from the date on which it was created." La.R.S. 31:28. In the present matter, two provisions of the Louisiana Mineral Code potentially govern: La.R.S. 31:29 and 30. Article 29 reads:

The prescription of nonuse running against a mineral servitude is interrupted by good faith operations for the discovery and production of minerals. By good faith is meant that the operations must be

(1) commenced with reasonable expectation of discovering and producing minerals in paying quantities at a particular point or depth,

(2) continued at the site chosen to that point or depth, and

(3) conducted in such a manner that they constitute a single operation although actual drilling or mining is not conducted at all times.

Article 2 of the mineral code provides:

> The provisions of this Code are supplementary to those of the Louisiana Civil Code and are applicable specifically to the subject matter of mineral law. In the event of conflict between the provisions of this Code and those of the Civil Code or other laws the provisions of this Code shall prevail. If this Code does not expressly or impliedly provide for a particular situation, the Civil Code or other laws are applicable.

The Mineral Code is silent on who must carry the burden of proof demonstrating use of the mineral servitude; the Civil Code, however, is not: "When the prescription of nonuse is pleaded, the owner of the dominant estate has the burden of proving that he or some other person has made use of the servitude as appertaining to his estate during the period of time required for the accrual of the prescription." La.Civ.Code art. 764. Our colleagues on the second circuit have found La.Civ.Code art. 764 applicable to mineral servitudes, and we agree. See *Cannisnia Plantation, LLC. v. Cecil Blount Farms, LLC*, 53,252 (La.App. 2 Cir. 3/4/20), 293 So.3d 157, *writ denied*, 20-783 (La. 10/14/20), 302 So.3d 1116. Thus, as the mover on the summary judgment appealed in this case, appellee bore the burden of proving interruption in her motion for summary judgment.

Article 30 provides:

> An interruption takes place on the date actual drilling or mining operations are commenced on the land burdened by the servitude or, as provided in Article 33, on a conventional or compulsory unit including all or a portion thereof. Preparations for the commencement of actual drilling or mining operations, such as geological or geophysical exploration, surveying, clearing of a site, and the hauling and erection of materials and structures necessary to conduct operations do not interrupt prescription. Prescription commences anew from the last day on which actual drilling or mining operations are conducted.

Appellee argues that Article 29 governs prescription in this matter, and the trial court agreed.

The general principles of statutory construction have been succinctly summarized by our supreme court:

7

It is presumed that every word, sentence or provision in the statute was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. Conversely, it will not be presumed that the Legislature inserted idle, meaningless or superfluous language in the statute or that it intended for any part or provision of the statute to be meaningless, redundant or useless. The Legislature is presumed to have enacted each statute with deliberation and with full knowledge of all existing laws on the same subject. A statute's meaning and intent is determined after consideration of the entire statute and all other statutes on the same subject matter, and a construction should be placed on the provision in question which is consistent with the express terms of the statute and with the obvious intent of the Legislature in its enactment of the statute. Where it is possible, the courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions. Moreover, when a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written. A construction of a law which creates an inconsistency should be avoided when a reasonable interpretation can be adopted which will not do violence to the plain words of the statute and will carry out the Legislature's intention. Ultimately, it is clear that the law provides that the statute be accorded a fair and genuine construction. A reasonable construction in light of the statute's purpose is what is required.

*ABL Mgmt., Inc. v. Bd. of Sup'rs of S. Univ.*, 00-798, pp. 6–7 (La. 11/28/00), 773 So. 2d 131, 135 (citations omitted).

The Mineral Code is comprised of Title 31 of the Louisiana Revised Statutes. Chapter 4 governs "The Mineral Servitude." Part 4 of Chapter 4 governs "Commencement of Prescription." Subpart B of part 4 governs "Interruption of the Prescription of Nonuse." It is within Subpart B that Articles 29 and 30 are found. The Mineral Code itself states that Article 29 through 31 state general principles. *See* La.R.S. 31:32.

In support of her position that Article 29, not Article 30, governs the case, appellee cites the matter of *Midnight Drilling, LLC v. Triche*, 12-1043 (La.App. 1 Cir. 6/19/13) (unpublished opinion), *writ denied*, 13-1731 (La. 11/1/13), 125 So.3d 432. In *Midnight Drilling*, the Triches purchased land in 1973 from Mrs. Cole, who reserved a mineral servitude. One tract of this land lays north of the Intercoastal

8

Waterway and the other south of the waterway. Drilling commenced in February 2009 in the northern tract. The Commissioner of Conservation designated this as a unit well after he created a unit in August 2009. The Triches and Coles argued they were entitled to the production, and Midnight Drilling invoked a concursus. In their answer, the Triches argued that the separation of the tracts of land by the Intercoastal Waterway created two separate mineral servitudes and pleaded prescription of nonuse against the Coles' claims as to the northern tract. The Coles asserted that another well, Cole #2, had been drilled before the Midnight Drilling well interrupted prescription.

Cole #2 operated until 1989 as a compulsory unit well. It was a directional well physically located on the surface of the northern tract but did not produce minerals from beneath the northern tract. After 1989, the well operated as a lease well.

The trial court found that there were two separate servitudes and that the drilling of the earlier well did not interrupt prescription as to the servitude burdening the northern tract. The first circuit affirmed.

The court of appeal's analysis regarding the effect of Cole #2 on prescription began with the language of Article 29, which requires that good faith operations be conducted with the expectation of discovery and production of minerals at a particular point or depth. While Article 30 requires that interruption occurs when good faith operations are commenced on the land burdened by the servitude, its language must be construed *in pari materia* with Articles 29 and 36, which governs unit production as an interruption of prescription. The court held (emphasis in original):

> Construing the articles together, we find that good faith operations for
> the discovery and production of minerals *from the property that is
> encumbered by the mineral servitude* is necessary to interrupt the

prescription of nonuse. Accordingly, drilling and production operations conducted at the surface of a well do not interrupt prescription of a mineral servitude encumbering the surface location if the operations are for the sole and exclusive purpose of discovering and producing minerals from other immovable property that is not subject to the servitude.

*Midnight Oil* can be read to stand for the proposition that where the well ends determines whether prescription has been interrupted. To the extent that this reading represents a valid interpretation of the provisions governing interruption of prescription—which is questionable, especially in light of Articles 30 and 33—it certainly does not help appellee's position. She bore the burden of demonstrating that the drill hit its intended mark within the prescriptive period.

Article 29 states the broad principle that good faith operation for exploration and production interrupts prescription. The sections that follow address specific circumstances that often arise. Article 30 requires that spudding occur on the land burdened by the servitude or within the unit in which the burdened land is located to interrupt prescription; preparations for drilling are insufficient. Article 31 builds upon this premise: actual drilling before the prescriptive date interrupts prescription even though operations are not completed. Article 33 provides that operations within a unit and not on servitude-burdened land interrupts prescription only as to the portion of the burdened land that is within the unit. These articles impose clear temporal *and* spatial requirements for interrupting prescription of mineral servitudes. Good faith operations are certainly required; but if good faith operations were all that is required, the provision in Article 30 regarding location is rendered superfluous.

The Commissioner of Conservation's creation of a unit that encompasses land burdened by a servitude clearly does not supersede the legislature's pronouncement that operations "on the land burdened by the servitude or, as provided in Article 33,

10

on a conventional or compulsory unit" interrupt the prescription of nonuse. La.R.S. 31:30. See *Exchange Oil & Gas Co. v. Foster*, 237 So.2d 904, (La.App. 1 Cir. 1970), *writ denied*, 256 La. 884, 239 So.2d 541 (1970). Article 30 specifically addresses what operations will interrupt prescription; to hold otherwise is to ignore its plain wording.

The trial court erred as a matter of law in ruling that the controlling event was the spudding of the well outside the boundary of the unit.

## *Klein affidavit*

Because the commencement of actual drilling or mining on the land burdened by the servitude or on the unit controls when prescription is interrupted, we now turn to the only exhibit that was filed that showed when such operations commenced: Ms. Klein's affidavit. Appellants argue that Ms. Klein's affidavit was originally submitted in opposition to a motion for summary judgment filed by appellee in 2010 and that under La.Code Civ.P. arts 966 and 967 as they existed at the time, the Klein affidavit was in proper form. Given that this motion for summary judgment was "passed" on the trial court's calendar and appellee's previous counsel did not object to the affidavit, appellants argue we should consider it. We disagree.

Louisiana Code of Civil Procedure Article 967(A) has required that supporting or opposing affidavits must be based on personal knowledge and that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith[]" since it was amended by 1966 La. Acts No. 36, § 1. Appellants did not incorporate Ms. Klein's affidavit by reference in their own motion for summary judgment or in opposition to appellee's motion; rather, they submitted it anew. The failure to attach the referenced drill logs and surveys that Ms. Klein attested proved when the drill pierced the unit or serve them with the motion or opposition is fatal to her affidavit.

11

The insufficiency of the Klein affidavit, though, is not the critical reality here. As we noted above, appellants bear no burden to prove that prescription has tolled. Rather, appellee must prove that prescription has been interrupted. Thus, the question is whether appellee presented evidence sufficient to clearly demonstrate that prescription was interrupted. The answer is no, she did not.

The material fact governing this case is when the drill crossed the boundary of the unit. Appellee offered no evidence to establish that time, and appellants offered a defective affidavit to establish the fact. Accordingly, a genuine issue of material fact exists that precludes judgment on the issue of prescription of nonuse.

## DISPOSITION

The judgment of the trial court in favor of appellee, Bobby Jean Busby Patin, is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion. All costs of the proceeding are taxed to defendant/appellee, Bobby Jean Busby Patin.

**REVERSED AND REMANDED.**