# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #019

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **26th day of April, 2024** are as follows:

**BY Crain, J.:**

| | |
|---|---|
| 2023-C-01108<br>C/W<br>2023-C-01118 | MAYOR-PRESIDENT SHARON WESTON BROOME, LEWIS O. UNGLESBY, LAMONT COLE, AND M. E. CORMIER VS. CHRIS RIALS AND NORMAN BROWNING, ORGANIZERS OF THE PETITION TO INCORPORATE ST. GEORGE (Parish of East Baton Rouge)<br><br>REVERSED AND RENDERED. SEE OPINION.<br><br>Weimer, C.J., dissents and assigns reasons.<br>Crichton, J., dissents and assigns reasons.<br>Griffin, J., dissents for the reasons assigned by Chief Justice Weimer and Justice Crichton. |

SUPREME COURT OF LOUISIANA

No. 2023-C-01108

c/w

No. 2023-C-01118

MAYOR-PRESIDENT SHARON WESTON BROOME, LEWIS O. UNGLESBY, LAMONT COLE, AND M. E. CORMIER

VS.

CHRIS RIALS AND NORMAN BROWNING, ORGANIZERS OF THE PETITION TO INCORPORATE ST. GEORGE

On Writ of Certiorari to the Court of Appeal, First Circuit, Parish of East Baton Rouge

**CRAIN, J.**

We are tasked with interpreting Louisiana Revised Statutes 33:4 relative to the incorporation of the proposed City of St. George. The affected area is south of and adjacent to the City of Baton Rouge and within East Baton Rouge Parish. Voters approved the incorporation. A challenge was filed, and the lower courts denied incorporation. We find legal error, review the matter *de novo*, reverse the denial of incorporation, and render judgment in favor of the incorporators and electors.

### FACTS AND PROCEDURAL HISTORY

A Petition for Incorporation of the City of St. George was filed on March 2, 2018.[1] The petition was signed by more than 25% of the electors residing in the proposed incorporation area, as certified by the registrar of voters. The governor

---

[1] Norman Browning and Chris Rials are the statutorily designated Chairman and Vice-Chairman for the Petition of St. George, ("Incorporators"). The petition was filed individually and on behalf of the electorate of St. George.

approved the petition and called a special election. The election was held on October 12, 2019, and the incorporation of St. George was approved by 54% of the voters.[2]

A legal challenge was filed by Baton Rouge's Mayor-President, Sharon Weston Broome,[3] and Metropolitan Councilman LaMont Cole ("Challengers").[4] No one residing or owning property in the proposed area of St. George challenged the incorporation.[5]

Challengers contended (1) the petition for incorporation was deficient under Louisiana Revised Statutes 33:1(A)(4) because St. George's plan for the provision of public services was inadequate; (2) St. George will be unable to provide the proposed public services within a reasonable period of time; and (3) incorporation is unreasonable because it will adversely impact Baton Rouge. Incorporators answered and filed numerous exceptions, including that neither Broome nor Cole had a right of action.

The trial court overruled the exceptions of no right of action and proceeded to an 8-day trial. After trial and taking the matter under advisement, the court denied incorporation, providing extensive written reasons for judgment. First, it found the petition "minimally satisfies the requirement of the statute." Then, it found incorporation unreasonable. Supporting that conclusion, the trial court found St. George will begin operating at a deficit of approximately $3 million, thus affecting the timely provision of the proposed public services. It also found that lost tax

---

[2] Over 32,000 electors voted in the special election.

[3] Broome, though suing as Mayor of the City-Parish, conceded neither the municipality nor the parish filed suit challenging incorporation.

[4] Lewis O. Unglesby and M.E. Cormier were named plaintiffs in the petition. However, Unglesby voluntarily withdrew, and Cormier was dismissed on an exception of no right of action.

[5] The petition challenging incorporation contained other allegations regarding the requirement of a full-time police department; dilution of minority voting power; violation of the City-Parish Plan of Government's prohibition against additional incorporations in East Baton Rouge Parish; and a mandatory injunction requiring the election to amend that Plan of Government. These issues were heard and disposed of and are not before us.

revenue will cost Baton Rouge approximately 35% of its general fund, constituting a "substantial adverse effect on Baton Rouge."

Both Incorporators and electors in St. George ("Proponents") appealed. In addition to challenging the merits, they re-urged the exceptions of no right of action as to Broome and Cole and asserted an exception of no cause of action, challenging the constitutionality of parts of Louisiana Revised Statutes 33:4.

The court of appeal sustained the exception of no right of action as to Broome, but denied it as to Cole.[6] It reasoned that Cole is an elected official of the governing authority of Baton Rouge, while Broome is not. Next, the court of appeal found the constitutional challenges procedurally improper. Finally, it found the petition deficient under Louisiana Revised Statutes 33:1(A)(4), as it failed to include a plan for the provision of services. The court noted "the petition did not provide the necessary information to place citizens of the area to be incorporated on notice of a plan for the provision of those services." Accordingly, the court of appeal affirmed the denial of incorporation without discussing whether incorporation is reasonable.

Proponents filed separate writ applications. We consolidated the cases and granted certiorari. *Broome v. Rials*, 23-01108 (La. 11/15/23), 373 So. 3d 57 and *Broome v. Rials*, 23-1118 (La. 11/15/23), 373 So.3d 58.

**DISCUSSION**

*Exception of No Right of Action*

Proponents argue the lower courts erred in denying the exception of no right of action as to Cole. The exception of no right of action questions the plaintiff's standing or interest to bring suit. La. C.C.P. art. 927(5). Standing is a concept utilized to determine if a party is sufficiently affected so as to ensure that a justiciable controversy is presented to the court. *In re Melancon*, 05-1702, p. 9 (La. 7/10/06),

---

[6] Broome has not challenged the grant of the exception of no right of action as to her. Incorporators moved to strike the brief filed jointly by Cole and Broome. We deny that motion.

3

935 So. 2d 661, 668. The requirement of standing is satisfied *if* it can be said that the plaintiff has an interest at stake in the litigation which can be legally protected. *Guidry v. Dufresne*, 96-0194, p. 4 (La. App. 1 Cir. 11/8/96), 687 So.2d 1044, 1046.

Here, standing is addressed by statute. Louisiana Revised Statutes 33:4 provides, in relevant part:

> A. Any of the following persons or governmental entities may file a petition contesting the incorporation:
>
> > (1) Any elector residing in the area proposed for incorporation.
> > (2) Any person owning land in such area.
> > (3) Any municipality which might be adversely affected or an elected official of the governing authority of such a municipality.
>
> \*\*\*
>
> D. The district court shall determine whether there has been full compliance with the provisions of this Subpart, including the accuracy of the statements in the petition and of the certification of the registrar of voters. The court shall also reach a determination as to whether the municipality can in all probability provide the proposed public services within a reasonable period of time and whether the incorporation is reasonable. In determining whether the incorporation is reasonable, the court shall consider the possible adverse effects the incorporation may have on other municipalities in the vicinity.

Subsection (A) is an exclusive list of who can challenge a municipality's incorporation. Cole claims to fall within subcategory (3) because he is an elected official of the governing authority of Baton Rouge, which is allegedly adversely affected by incorporation. Proponents, however, argue Cole can only sue with the approval of the governing authority and his real and actual interest is limited to the adverse effect on his municipality, Baton Rouge. No one contests that he is not acting for, nor does he have the approval of, the Metropolitan Council.

To properly determine standing, we are mindful of rules of statutory analysis. A statute must be read to give meaning to its plain language. *State, Department of Transportation and Development v. Walker,* 95-0185 (La. 6/30/95), 658 So.2d 190. Louisiana Revised Statutes 33:4(A)(3) does not condition an elected official's right to sue on the approval of the governing authority. As correctly noted by the court of

4

appeal, "any municipality which might be adversely affected" *or* "an elected official of the governing authority of such a municipality" may bring the action. The use of the disjunctive "or" presents two mutually exclusive alternatives. *Succession of Harlan*, 17-1132, p. 8 (La. 5/1/18), 250 So.3d 220, 225. Anyone meeting either of those separate and distinct provisions can bring the action.

Further, as a juridical person, a municipality can only act through a natural person. Requiring the elected official to have the approval of the municipality creates a redundancy. If interpreted that way, the municipality can sue through a natural person, or an elected official can sue for the municipality. In either case, only the municipality is suing, making the second part of the sentence unnecessary. It is presumed that every word, sentence, or provision in a statute is intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions are used. *ABL Mgmt., Inc. v. Bd. of Sup'rs of S. Univ.*, 00-0798 (La. 11/28/00), 773 So. 2d 131, 135. Conversely, it will not be presumed that the legislature inserts idle, meaningless, or superfluous language in a statute or that it intended any part or provision of the statute to be meaningless, redundant, or useless. *Id.* Louisiana Revised Statutes 33:4(A)(3) plainly provides that an elected official need not have authorization or approval of the governing authority to challenge an incorporation.

But, determining Cole's standing does not end there. He must have a real and actual interest in the particular claims asserted. *See* La. C.C.P. art. 681.[7] "[T]he standing inquiry requires careful judicial examination of . . . whether the plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984). Importantly, a court

---

[7] *See relatedly Jenkins v. City of Baton Rouge*, 14-1235, p. 6 (La. App. 1 Cir. 3/9/15), 166 So. 3d 1032, 1036, where the court held plaintiff had "no real and actual personal stake" in an annexation when his only basis for challenging it was an allegation that his residential police and fire protection services may be affected as a result of the annexation.

has no role in incorporation *unless* a challenge is made by a person with standing. Otherwise, the people's vote is valid and final. Because judicial review *only* arises if a proper challenge is lodged, which requires a real and actual interest, we interpret standing to challenge an incorporation narrowly.

Proponents contend Cole can only challenge whether incorporation is unreasonable due to the adverse effect on his municipality. In response, Challengers, relying on the use of "shall" in Louisiana Revised Statutes 33:4(D), suggest that once incorporation is challenged, the court determines all of the statutory components: the petition's compliance with the law; the proposed municipality's ability to provide services within a reasonable time; and whether the incorporation will have an adverse impact on Baton Rouge, making it unreasonable. Challengers' interpretation of the standing requirement is too broad.

Once again, we turn to tools of statutory interpretation. Statutes should be construed to give effect to each part. *See Luv N' Care, Ltd. v. Jackel Int'l Ltd.*, 19-0749, p. 8 (La. 1/29/20), 347 So. 3d 572, 578. Thus, Paragraph (A) of Louisiana Revised Statutes 33:4 must be read in conjunction with Paragraph (D). Paragraph (A) lists who has a real and actual interest to challenge incorporation. Paragraph (D) limits what that person can challenge. Evidencing this, Paragraph D, tracking the language of Paragraph A, states any municipality adversely affected (or an elected official thereof) can contest incorporation. That objection triggers the court's consideration of the adverse effects of incorporation on that municipality. Only the municipality or an elected official of the governing authority of the municipality can make an adverse impact challenge. In contrast, if a neighboring municipality does not object, then someone residing in the proposed incorporated area cannot assert an adverse impact on that municipality as a means of defeating incorporation. They would have no real and actual interest in that issue.

6

Applying these rules, we first address standing to challenge the sufficiency of the petition. We find this issue can only be challenged by an elector residing or owning land in the proposed incorporation area. A petition for incorporation is statutorily designed to inform the voter. In fact, in finding the subject petition insufficient, the court of appeal specifically concluded that it failed to "place citizens of the area to be incorporated on notice" of the planned services. Here, 54% of the voters were satisfied with the plan for providing services. No voter or elector residing or owning land in the proposed area of incorporation objected to the petition. Thus, one can reasonably conclude they found the plan adequate. Only those persons have a real and actual interest in that claim. Only they can claim insufficient information in the petition to make an informed vote.

Cole neither resides in nor owns property in St. George. He did not, and could not, vote in the election. Consequently, he has no real or actual interest in challenging the sufficiency of the petition. Because no one from within the incorporated area objected to it, the court of appeal erred in considering the sufficiency of the petition. Thus, we reverse.[8]

After finding the petition legally insufficient, the appellate court pretermitted Cole's other assignments of error. Those issues are whether St. George can provide services within a reasonable period of time, and whether incorporation is reasonable, including any adverse effect on any neighboring municipality. While remand for the appeals court to review the remaining trial court decisions is available, in the interests of judicial efficiency, time-sensitivity, and because we have a fully developed record, we review those decisions and render judgment. *See Evans v. Lungrin*, 97-0541 (La. 2/6/98), 708 So.2d 731.

---

[8] Even if Cole had standing to challenge the sufficiency of the petition, we find no error in the trial court's conclusion that the plan for the provision of services was statutorily compliant. The trial court's finding that the plan was "minimally" compliant is true inasmuch as the statute itself requires minimal compliance in its silence as to the requirements of the plan. Thus, regardless of the standing holding, we would reverse the court of appeal on the merits.

7

Before considering the pretermitted issues, we must determine Cole's standing to challenge them. He has express statutory standing to challenge incorporation as unreasonable due to its "adverse effects" on Baton Rouge, a "municipalit[y] in the vicinity." La. R.S. 33:4(A), (D). However, he also challenges St. George's ability to provide services within a reasonable period of time.

Normally, only a resident or landowner in St. George would have a real and actual interest in St. George's self-sufficiency. Challengers argue that if St. George cannot provide services, the consolidated government of East Baton Rouge Parish and Baton Rouge ("City-Parish") will bear that responsibility. Because the City-Parish operates from a single general fund, Baton Rouge could be affected if St. George cannot timely provide services to its citizens. This amounts to a real and actual interest for Cole, an elected official of Baton Rouge. La. R.S. 33:4(A)(3). We find he has standing to challenge whether St. George can provide public services within a reasonable time. La. R.S. 33:4(A)(3).

*Timely Provision of Public Services*

The challenge to St. George's ability to timely provide services centers on funding. The focus is on whether St. George has sufficient revenue to perform the proposed services. St. George's services are proposed to be divided between parish-provided services and non-parish-provided services. As recognized by the trial court, parish-provided services will continue without interruption and are, thus, unaffected by incorporation.[9] But, non-parish-provided services are conditioned

---

[9] These services are described in Subsection 5 of the Petition for Incorporation as:

> (1) Public Safety services through the continuation of services provided by St. George Fire Protection District, East Fire District, and the East Baton Rouge Sheriff's Office.

> (2) Sanitation and garbage collection through the continuation of services provided by the consolidated garbage service district.

> (3) Sewerage by continuation of comprehensive sewerage system fund.

> (4) Emergency Medical Services through continuation of services provided by the East Baton Rouge Department of EMS.

upon the availability of funds from taxes and fees authorized by law. The trial court properly noted that any tax must be approved by voters. Although that was done for the City of Central, also in East Baton Rouge Parish, when it incorporated, the trial court found that due to inadequate funds, it is "doubtful" St. George can timely provide all of its proposed services.[10]

Challengers' expert economist, Dr. James Richardson, opined it will cost roughly $51 million annually to operate St. George. His estimate has three components. First, using a per capita approach and a city comparison method, he found it will cost $38.71 million to provide the proposed public services.[11] Second, he added $4 million for additional law enforcement services. Third, he included $8.9 million per year as St. George's portion of the City-Parish employees' pension liability.

The trial court accepted the $51 million amount to operate St. George. St. George's revenue from an existing 2% sales tax is estimated to be $48 million dollars. That figure was undisputed and used by the experts on both sides. Consequently, the court found, "Based on the evidence, the City of St. George would

---

(5) 911 services through continuation of services provided by the East Baton Rouge Parish 911 District.

[10] Subsection 6 of the Petition for Incorporation provides:

The City will provide the following services through third party contract(s):

  a. Regulation of property use by adoption of planning and zoning ordinance.
  b. Building Inspections.
  c. Traffic signs and signals.
  d. Maintenance and improvement of municipal public streets and roads.
  e. Maintenance of right of ways.
  f. Maintenance and improvements to drainage system.
  g. Regulation of alcohol beverages as authorized by Louisiana Law.

[11] Richardson found the population of St. George is 22% of the population of Baton Rouge and unincorporated areas; thus, he employed a multiplier of .22 to the general fund budget of the City-Parish government, excluding police and fire services. As a second methodology, he used comparison cities outside of East Baton Rouge Parish.

run a deficit of approximately $3 million dollars on day one and this excludes the additional cost of the Sheriff." We find error in the court's calculation.

In determining the pension liability, Richardson did not account for an ordinance approved by the Metropolitan Council in 2019. Ordinance No. 17171 addresses "the financial liability for accrued pension debt in those situations where certain geographic areas are excised into a separate municipality within the Parish of East Baton Rouge" and provides a formula to calculate the pension debt. Using that ordinance, the evidence establishes that St. George's responsibility is only $5.1 million annually, not $8.9 million annually—a $3.8 million discrepancy. Richardson conceded he neither knew of nor relied upon the ordinance. No explanation is given by Challengers for not using the formula required by the ordinance. We find not applying the ordinance to calculate St. George's estimated pension liability is error.

Applying the ordinance eliminates the suggested operating deficit. Accepting the Challengers' cost estimates in all other respects, and only correcting the estimated pension liability, St. George's annual operating cost is $47.81 million, well within its undisputed $48 million revenue estimate.[12,13] The conclusion that St. George cannot, in all probability, provide its proposed public services within a reasonable period of time is not supported by the record.

Additionally, the trial court found the $51 million operating cost did not include $4 million for supplemental law enforcement services. That is contrary to the testimony of Richardson. He included that amount in his $51 million estimate. In any event, the citizens of St. George will not incur additional Sheriff's costs unless

---

[12] Using the formula, the annual pension liability for St. George is $5.1 million. We add $5.1 million to Richardson's projected costs of $42.71 million for a total of $47.81 million.

[13] Moreover, the ordinance contemplates a scenario where the $5.1 million pension obligation would not be due until "two years from the date of incorporation." Thus, that would further decrease the initial cost of operations by $5.1 million.

they choose to. St. George proposed $4 million as *supplemental* pay to the East Baton Rouge Parish Sheriff. They have the option of accepting the current level of law enforcement presence within the incorporated area. Sheriff Gautreaux testified the residents and property owners already pay for law enforcement services through parish-wide ad valorem taxes. La. Const. Art. V, § 27. As the chief law enforcement officer in the parish, the Sheriff has a constitutional duty to protect all people in East Baton Rouge Parish. *Id.* His services and the taxes collected to pay for them are unchanged by incorporation. If St. George decides those services are sufficient, there is no $4 million expense. Should it need more law enforcement services, reasonable budgeting decisions can be made to acquire them.[14] Those decisions are the essence of self-governance. Given the discretionary nature of the expense, we will not second-guess St. George's decision to supplement law enforcement services, when, even accepting these discretionary costs, their budget is balanced.

Due to these findings, we do not address other alleged shortcomings in Richardson's calculation methods.[15] Those are: the ability of St. George to reduce some of its costs through negotiations with third party contractors;[16] the opportunity to eliminate certain overhead expenses by not having city employees; and the capacity for St. George to make its own spending and funding decisions (*i.e.,* prioritizing certain projects over others and increasing revenue streams). We find St.

---

[14] Cities can raise sales taxes if the tax is not capped, increase service charges, increase user fees, make cuts to expenses, or borrow money. La. Const. art. VI § 27; La. R.S. 39:871. The record establishes Baton Rouge operates with substantial bond indebtedness. It is unreasonable to require St. George to operate with cash only.

[15] Incorporators challenge the per capita approach as not accurately representing the cost of services provided by the City-Parish for St. George. They also contest Richardson's failure to exclude City-Parish expenses incurred only by Baton Rouge and not St. George. Finally, they challenge the comparison cities as not truly comparable.

[16] In making this argument, Incorporators point to the success of Central's incorporation effort, where privatization of services has led to a budget surplus.

11

George can, in all probability, provide its proposed public services within a reasonable period of time.  La. R.S. 33:4(D).

*Reasonableness*

Next, Cole challenges the reasonableness of incorporation.  As noted earlier, Cole has express statutory standing to make this challenge.  The trial court is charged with determining "whether incorporation is reasonable."  Louisiana Revised Statutes 33:4(D) instructs, "In determining whether the incorporation is reasonable, the court shall consider the possible adverse effects the incorporation may have on other municipalities in the vicinity." The trial court found an adverse economic effect determinative of the reasonableness inquiry, thus requiring denial of incorporation.[17]  Further, in analyzing financial impact, the trial court only considered lost revenue to Baton Rouge, without considering cost-savings from St. George's incorporation.  We find errors in those approaches, thus requiring a *de novo* review.  *Kevin Associates, L.L.C. v. Crawford*, 03-0211, p. 15 (La. 1/30/04), 865 So.2d 34, 43.

Despite the constitutional and statutory favor given incorporation, Louisiana Revised Statutes 33:4(D) provides no factors to consider in determining reasonableness, other than adverse impact.  Reaching a reasonableness conclusion without supporting analytical factors risks arbitrariness.  And, although the statute requires the court to consider "possible adverse effects," it does not make that the exclusive factor.  We conclude that "reasonableness" requires consideration of many factors, as many competing interests must be addressed to determine fairness, practicality, and soundness of judgment.  Consequently, we address "possible adverse effects" on Baton Rouge, as one of a number of factors analyzed to determine whether incorporation is "reasonable."

---

[17] The trial court found the loss of the 2% sales tax, $48 million, will reduce the City-Parish's general fund by approximately 35%, which will have "a substantial adverse effect on Baton Rouge."  If voters approve, St. George can retain the 2% sales tax collected inside its municipal boundaries.  Currently, that revenue goes into the general fund of the City-Parish.

12

First, in considering "reasonableness," we recognize our constitution and statutory scheme allows for and favors incorporation. The Louisiana Constitution protects individual rights, including the right to incorporate. Article I, § 1 affirms that our government is founded on the will of the people alone. As such, it recognizes certain rights are inalienable and, thus, preserved inviolate by the state, including protecting the happiness and general welfare of the people. Our constitution preserves and protects the right of self-governance in Article I, § 26, which provides: "The people of this state have the sole and exclusive right of governing themselves as a free and sovereign state; and do, and forever hereafter shall, exercise and enjoy every power, jurisdiction, and right, pertaining thereto, which is not, or may not hereafter be, by them expressly delegated to the United States of America in congress assembled." Article I, § 24 reinforces these principles, stating: "The enumeration in this constitution of certain rights shall not deny or disparage other rights retained by the individual citizens of the state."

Constitutional protection is afforded to the right of the people to incorporate in Article VI, §2: "The legislature shall provide by general law for the incorporation, consolidation, merger, and government of municipalities. No local or special law shall create a municipal corporation or amend, modify, or repeal a municipal charter." Additionally, "[n]o parish plan of government or home rule charter shall prohibit the incorporation of a city, town, or village as provided by general law." La. Const. art. VI §8.

In response to the constitutional mandate to enact laws to govern the exercise of the right to incorporate, the legislature enacted Louisiana Revised Statutes 33:1, *et. seq.* These statutes allow residents to propose incorporation and, upon approval of the governor, to vote on it. La. R.S. 33:1-3. That vote is final unless, in response to a legal challenge, a court deems the incorporation unreasonable. La. R.S. 33:4. This statutory scheme permits inhabitants of an area to freely associate and petition

13

for self-government. It acknowledges the will of the people by requiring an election where only those within the incorporating area can vote. And ultimately, it allows the result of that election to be final. Judicial review is available only if incorporation is contested. And, the presumptive validity of incorporation is only overcome by a showing of unreasonableness.

In establishing factors to determine reasonableness of incorporation, we find guidance from the Mississippi Supreme Court in *City of Pascagoula v. Scheffler*, 487 So. 2d 196, 201-02 (Miss. 1986) (internal citations omitted), where the court explained:

> No one factor per se determines reasonableness, but a consideration of all pertinent factors gives guidance to reach an ultimate conclusion. Factors are: [1]whether a proposed area has definite characteristics of a village; [2] whether the residents of the proposed area for incorporation have taken initial steps toward incorporation; [3] whether a nearby city has initiated preliminary proceedings toward annexation; [4] whether there has been any financial commitments toward incorporation or annexation proceedings; [5] whether a neighboring city has the prerogative to contest incorporation, although consent of nearby city not required; [6] whether incorporation [a]ffects an existing city within three miles; [7] whether population of area shows an increase and continuity of settlement; [8] whether a community has a separate identity; [9] whether natural geographical boundaries separate an area from other municipalities; [10] whether transportation is affected; [11] whether incorporation will affect the interest of landowners in the affected area; [12] whether cost of operating the municipality is prohibitive; [13] whether an estimated tax base of proposed area will support incorporation; [14] whether the overall welfare of residents of affected area is improved by incorporation.

These factors were recently analyzed in *Jackson v. Byram Incorporators*, 16 So. 3d 662 (Miss. 2009). We find this non-exclusive list of factors useful and apply them here.

**Does the proposed area have definite characteristics of a village?**

The record establishes that St. George is an identifiable area with a thriving business community and its own fire department. The area also desires its own school district, which is largely the impetus of the incorporation effort. A single issue, like schools, can support incorporation. Schools are often the hallmark of a

14

community.  The desire for a separate school district evidences St. George's distinct identity from Baton Rouge.

Further, the area boasts economic and population growth unique to St. George and not connected to or dependent on Baton Rouge.  As explained by Incorporators' expert, Dr. Will Heath, Baton Rouge contains its own "fixed assets":  the state capitol, universities, the river front.  Those are wholly separate from the business and residential interests of St. George, giving both St. George and Baton Rouge their separate identities.  This factor favors incorporation.

**Have the residents of the proposed area for incorporation taken initial steps toward incorporation?**

The residents of St. George petitioned and voted for incorporation by a 54% vote.  This factor favors incorporation.

**Has a nearby city initiated preliminary proceedings toward annexation?**

In 2014, businesses and government interests within the proposed area for incorporation successfully petitioned for annexation into Baton Rouge.  The people in those areas decided how they would associate and which local government would govern them.  The rights of the remaining citizens of St. George are no less important.  The annexations, which included portions of the LSU campus, the Mall of Louisiana, and L'Auberge Casino, created significant economic value for Baton Rouge. They also reduced any adverse impact of St. George's incorporation.  This factor favors incorporation.

**Have there been any financial commitments toward incorporation or annexation proceedings?**

The incorporation effort began in 2013, after two failed attempts to form a school district.  The initial petition to incorporate failed.  The current incorporation attempt began in 2018.  For over a decade, substantial money has been expended on legal and expert fees to form an independent school district and to incorporate. This factor favors incorporation.

15

**Does a neighboring city have the prerogative to contest incorporation, although consent of such city is not required?**

An elected official of Baton Rouge has exercised his individual right to contest incorporation. Notably, Baton Rouge did not contest the incorporation. This factor favors incorporation.

**Does incorporation affect an existing city within three miles?**

The statute recognizes this factor as part of the reasonableness test: "In determining whether the incorporation is reasonable, the court shall consider the possible adverse effects the incorporation may have on other municipalities in the vicinity." La. R.S. 33:4(D). The effect of incorporation on a neighboring city is usually one of restricted geography. In other words, does the incorporation adversely affect the ability of a neighboring municipality to grow, annex and expand? If the geographic boundaries for incorporation impinge on another area's potential for growth, incorporation may be unreasonable.

In contrast, adjoining municipalities are not usually funded by a surrounding unincorporated area. Their tax base is within their municipal limits. This case is different. The City-Parish's fund-allocating agreements that result in shared tax revenues between the incorporated and unincorporated areas is not typical. So, Baton Rouge makes the argument that incorporating St. George will decrease its funding. Thus, an adverse impact or effect.

While the argument may be correct, it is not complete. A decrease in funding to the City-Parish does not necessarily result in an unreasonable adverse impact. Cost-savings must also be considered to determine the full economic impact of incorporation.

Challengers' evidence shows only expected lost tax revenue. They failed to offer evidence of any corresponding advantage to Baton Rouge of not providing services to St. George. If Baton Rouge currently provides no services to St. George,

16

that weighs in favor of incorporation: St. George citizens pay taxes but receive no services. If the only impact of incorporation is a reduction in tax revenue paid by St. George citizens to Baton Rouge, with no reciprocal services, a windfall results for Baton Rouge. Incorporation will reasonably rectify that inequity.

On the other hand, if St. George citizens receive services for the taxes they pay, incorporation brings cost-savings to Baton Rouge, which will no longer be required to provide those services. Challengers failed to address that. Without evidence of the full economic impact of incorporation, denying incorporation because of an unreasonable economic impact on Baton Rouge is error.

Challengers' economic expert, Richardson, did not consider the cost effect of Baton Rouge not providing services after incorporation. He used per capita and comparative city approaches to determine St. George's expenses. These accounting methods do not actually establish what the City-Parish is spending on St. George. Linda Hunt, Finance Director for the City-Parish, conceded there will be cost-savings if St. George assumes financial responsibility for services currently provided by the City-Parish. However, she admitted to not quantifying or determining the amount. The City-Parish has discretion in allocating revenues between Baton Rouge and the unincorporated areas. Evidence of that allocation is critical to determining reasonableness here and is totally absent from the record.

The only evidence put forth by Challengers that arguably relates to cost-savings is St. George's estimated operating cost: $51 million. In other words, if St. George's services cost $51 million, Baton Rouge will save that amount by not providing those services. If the amount is $47.81 million, which accounts for the correct pension liability, that nearly neutralizes the lost revenue claimed by Baton Rouge, which is roughly $48 million.

But, Incorporator's expert, Mr. Jean-Paul Tujague, testified cost-savings to Baton Rouge lessens the financial impact to $32 million, not $48 million. $32

17

million lost revenue results in an approximate 10% cut to a $320 million budget.[18] Ultimately, Challengers bear the burden of proving an unreasonable adverse effect on Baton Rouge. But, their evidence was either incomplete (failed to show the net impact) or showed *no* financial impact due to a complete cost offset. Relying on Incorporators' evidence, a 10% budget reduction is not an unreasonable adverse effect.

Also, the statute does not limit the adverse impact factor to economics. Evidence shows that Baton Rouge can actually be positively affected by St. George's growing population. Those people and their money will stay in the parish. This increases revenues and improves quality of life across the parish. This factor favors incorporation.

**Does the population of the area show an increase and continuity of settlement?**

The record establishes the population of St. George is increasing. Conversely, the population of Baton Rouge is declining. If allowed to incorporate, St. George's population will stay in East Baton Rouge Parish, thus benefitting Baton Rouge because of shared funds. Testimony established that without incorporation, an out-migration is possible. St. George residents can relocate to neighboring parishes with more shared interests, including more desirable school districts. Should an out-

---

[18] The City-Parish's general fund is $320 million. Richardson and the trial court found $214 million of that fund cannot be cut because certain expenses are either "mandated" or "difficult to be reduced." That leaves $106 million in the budget that "can be reduced." The trial court found that taking $41.4 million ($48 million in lost tax revenue minus St. George's $6.6 million contribution towards constitutional offices) from that $106 million budget amounted to an "approximate" 35% reduction of Baton Rouge's budget. Reducing the amount of the budget from $320 to $106 million but keeping the tax loss the same (roughly $42 million), inflates the adverse impact. First, all amounts in the general fund are discretionary to a limit. That requires setting spending priorities. The approach by Richardson and the trial court to determine the impact on Baton Rouge's general fund assumes all City-Parish budget decisions are reasonable and should be funded. Because every municipality must develop its own budget priorities (by making cuts in spending, not incurring capital projects when funds are limited, and raising funds), it is unreasonable to compare the reduction caused by the loss of St. George's contribution in sales tax to a reduced budget. Any projected impact should be calculated from the full budget. Thus, even using Challengers' numbers, the budget is reduced by only 12.9%.

18

migration occur, the City-Parish's general fund will be adversely impacted even without incorporation.

The opposite is also true. Dr. Heath explained that St. George has proven its ability to attract business, generate trade, and create wealth. If incorporated, St. George's economic and population growth creates a positive impact on Baton Rouge because it increases tax dollars in the parish and promotes parish population retention. Population and continuity of settlement are beneficial to both St. George and Baton Rouge. This factor favors incorporation.

**Does a community have a separate identity?**

This is largely repetitive of the first factor regarding the municipality's unique identity as a village. However, we note Challengers' argument that St. George has no separate identity, and that major thoroughfares will be split in half by imaginary city lines, without natural geographic delineation. But, that fact is inherent in any map-drawing. Abutting an area already incorporated and recently annexed into Baton Rouge is an unavoidable reality and not determinative. This factor is neutral and does not weigh in favor of or against incorporation.

**Do natural geographical boundaries separate an area from other municipalities?**

Major water ways (the Mississippi River, the Amite River, Bayou Manchac), as well as locally known creeks, act as some boundaries. Other areas are marked by major highways. And, as discussed above, other areas are delineated only by map lines and pre-existing boundaries. This factor is neutral and does not weigh in favor of or against incorporation.

**Is transportation affected?**

There is no evidence of any impact on transit costs. However, the evidence relative to public works shows that St. George will privatize most, if not all, of those

19

services.[19]  That should have been reflected as a reduction of the adverse impact to Baton Rouge, which will not bear that responsibility.  This factor favors incorporation.

**Will incorporation affect the interest of landowners in the affected area?**

Landowners and residents of St. George will benefit by their sales tax revenue being used on needs specific to St. George.  Again, because of the nature of the consolidated City-Parish government, Baton Rouge has arguably experienced a windfall by collecting taxes in St. George without returning proportionate money and services.  Incorporation will allow the money paid by St. George citizens to stay in St. George.  This factor favors incorporation.

**Is the cost of operating the municipality prohibitive?**

This factor is previously analyzed under the ability to provide public services within a reasonable period of time.  We find St. George's revenue will cover its operating costs. This factor favors incorporation.

**Will an estimated tax base of the proposed area support incorporation?**

After incorporation, and if approved in an election, the 2% sales tax now paid to the City-Parish will be paid to St. George.  A majority of electors in St. George already voted to incorporate.  According to Incorporator Chris Rials, "one would reasonably expect that if 54% of voters wanted to have St. George, 54% would approve what they're already paying for."  We agree.  Thus, there is a tax base of roughly $48 million to support services proposed by St. George. The sufficiency of that amount is previously addressed in the section regarding the ability of St. George to provide public services within a reasonable period of time.  This factor favors incorporation.

**Is the overall welfare of the residents of the affected area improved by incorporation?**

---

[19] As represented by the Incorporators, these services include, but are not limited to drainage maintenance, minor street repairs, traffic control issues, street sign maintenance, litter control, and weather-related emergency services.

20

This factor addresses the benefits to St. George if it is incorporated. Instead of solely determining whether there is an adverse effect on a neighboring city, reasonableness requires that we address the other side of the scale: the advantages to the proposed municipality. Financially, the residents of St. George will receive local services for their taxes. Incorporation improves the general welfare of the people and empowers self-determination. The people will decide what is in their best interest and govern accordingly. That is consistent with our constitutionally-described purpose of government. La. Const. art. I, § 1; La. Const. article I, §26. Self-determination allows a community to protect, promote, and prioritize what is uniquely important to them. It should be favored. This factor favors incorporation.

**Application of factors and resulting conclusion:**

After considering each of the factors, we find incorporation reasonable.

## CONCLUSION

Cole has the statutory right to challenge the incorporation of St. George. However, his real and actual interest is limited to the adverse impact incorporation will have on Baton Rouge, a municipality in the vicinity, and whether St. George can timely provide services. Despite the challenge, we conclude St. George can provide public services within a reasonable period of time. Applying objective factors to determine reasonableness, we hold incorporation is reasonable.[20] We reverse the lower courts' denial of incorporation and render judgment in favor of Proponents.

**REVERSED AND RENDERED.**

---

[20] Incorporators filed an exception of peremption in this court. Our holding renders that exception moot.

# SUPREME COURT OF LOUISIANA

### No. 2023-C-01108

### c/w

### No. 2023-C-01118

### MAYOR-PRESIDENT SHARON WESTON BROOME, LEWIS O. UNGLESBY, LAMONT COLE, AND M. E. CORMIER

### VS.

### CHRIS RIALS AND NORMAN BROWNING, ORGANIZERS OF THE PETITION TO INCORPORATE ST. GEORGE

*On Writ of Certiorari to the Court of Appeal, First Circuit, Parish of East Baton Rouge*

**WEIMER, C.J.**, dissenting.

The decision in this case achieves a result masquerading as an opinion. Disappointingly, the majority opinion deploys a procedural ruse to avoid evaluating whether there has been compliance with a statute that requires "full compliance" with its provisions. La. R.S. 33:4(D). Among those provisions is the requirement that a petition for incorporation include "[a] listing of the public services the municipal corporation proposes to render to the area and a plan for the provision of these services." La. R.S. 33:1(A)(4). As will be demonstrated, there is no procedural impediment to the evaluation of the petition for "full compliance," and the evidence establishes the petition does not include a plan for the provision of services, and therefore is legally deficient.

In an effort to avoid addressing the dispositive issue of the petition's full compliance with the statutory mandate, the majority opinion strains to find that Metropolitan Councilman LaMont Cole does not have a right of action to contest the sufficiency of the Petition for Incorporation of the City of St. George. The statutory

language clearly provides otherwise. The majority opinion reads language into the relevant statutes, and ignores language that is in the statutes.

The exception of no right of action tests, quite simply, whether the particular plaintiff falls as a matter of law within the general class of persons in whose favor the law grants the cause of action sought to be asserted by the lawsuit. **J-W Power Co. v. State ex rel Dept. of Revenue & Taxation**, 10-1598, p.7 (La. 3/15/11), 59 So.3d 1234, 1238-39. While the term "standing" is sometimes referred to as being synonymous with a "right of action," in fact "standing" is a jurisprudential rule typically employed in litigation challenging a statute or an executive or administrative decision by a governmental agency, *i.e.*, suits involving public rights and duties. 1 STEVEN A. PLOTKIIN, LOUISIANA PRACTICE SERIES: CIVIL PROCEDURE 520 (2023 ed.); 1 FRANK A. MARAIST, LOUISIANA CIVIL LAW TREATISE: CIVIL PROCEDURE, § 4.2 (2d ed. 2008), p. 77. It is important to recognize the distinction because when the legislature has conferred a right of action through a statute, the jurisprudential requirement of a "special injury" does not apply, and the inquiry is limited to statutory construction: whether the plaintiff falls within the category of persons in whose favor the statute grants the particular cause of action.[1] See, e.g., **Rismiller v. Gemini Insurance Co.**, 20-00313 (La. 6/30/21), 330 So.3d 145; see also, **Children of the Kingdom v. Central Appraisal District of Taylor County**, 674 S.W.3d 407, 414 (Tex. App. Eastland 2023) (noting that when standing is conferred by statute, the common-law criteria of a special injury does not apply and the analysis is a straight statutory construction of the relevant statute to determine upon whom the legislature conferred standing and whether the claimant in question falls within that category).

---

[1] In Louisiana, a civil law jurisdiction, the courts are bound by legislation–the primary source of law; jurisprudence is a secondary source. See, La. C.C. art. 1.

The legislature clearly has authority to grant a right of action and, in doing so, it may grant a right of action to a person, even though that person is not the real party in interest. Indeed, La. C.C.P. art. 681 expressly contemplates such when it states, "**Except as otherwise provided by law**, an action can be brought only by a person having a real and actual interest which he asserts." (Emphasis added.)

In the present case, the right of action to contest an incorporation is statutorily conferred. Or, as the majority opinion phrases it, in this case "standing is addressed by statute." **Broome v. Rials**, 23-01108 c/w 23-01118 (La. _/__/24), slip op. at 4.

Louisiana Revised Statutes 33:4(A) specifies the parties in whose favor a cause of action to contest an incorporation is granted:

A. Any of the following persons or governmental entities may file a petition contesting the incorporation:

(1) Any elector residing in the area proposed for incorporation.
(2) Any person owning land in such area.
(3) Any municipality which might be adversely affected or an elected official of the governing authority of such a municipality.

Because the right of action in a proceeding to contest an incorporation is granted by statute, Councilman Cole need only demonstrate that he falls within one of the above enumerated categories of plaintiffs in order to establish his right to proceed with this litigation. As the majority opinion correctly recognizes, the Councilman has demonstrated that he falls within La. R.S. 33:4(A)(3), as an elected official of the governing authority of a municipality which might be adversely affected by the incorporation. **Broome**, slip op. at 4-5. Also as the majority's determination correctly recognizes, as an elected official he "need not have authorization or approval of the governing authority" to file his challenge. **Broome**, slip op. at 5. Councilman Cole, thus, has a right of action, pursuant to statute, to "file a petition contesting the incorporation." Louisiana Revised Statute 33:4(A)(3)

3

recognizes and confers upon the Councilman an interest in the subject matter of this litigation, without limitation.

Insofar as the Councilman's "standing" is concerned, then, one need look no further than the provisions of La. R.S. 33:4(A), which according to the majority opinion, "lists who has a *real and actual interest* to challenge incorporation." **Broome**, slip op. at 6. (Italics supplied.) Nevertheless, the majority decision looks beyond this clear statutory grant of a right of action, and what the opinion itself declares to be the conveyance of "a real and actual interest" in the Councilman to challenge incorporation, to find that Paragraph A does not really effect what the majority opinion says it effects. The majority opinion goes on to state Paragraph A must be read in conjunction with Paragraph D, which, the opinion maintains, limits and qualifies the unqualified right of action conveyed in Paragraph A. **Broome**, slip op. at 6. Although couched as statutory interpretation, the majority's holding reads into the statute verbiage that does not actually appear. In the process, the holding undermines the legislature's explicit determination as to what parties granted a right of action can contest relative to the incorporation. Just as importantly, the holding limits the aspects of the incorporation the legislature has determined must be decided when any legal action contesting an incorporation is filed.

At the risk of repetition, but to emphasize the dispositive statutory language, at issue according to the majority opinion is the interpretation of two paragraphs of La. R.S. 33:4 and the interplay of these paragraphs which state:

> A. Any of the following persons or governmental entities may file a petition contesting the incorporation:
>
> (1) Any elector residing in the area proposed for incorporation.
> (2) Any person owning land in such area.
> (3) Any municipality which might be adversely affected or an elected official of the governing authority of such a municipality.

4

. . . .

>D. The district court shall determine whether there has been full compliance with the provisions of this Subpart, including the accuracy of the statements in the petition and of the certification of the registrar of voters. The court shall also reach a determination as to whether the municipality can in all probability provide the proposed public services within a reasonable period of time and whether the incorporation is reasonable. In determining whether the incorporation is reasonable, the court shall consider the possible adverse effects the incorporation may have on other municipalities in the vicinity.

Clearly, as the majority states, Paragraph A confers a right of action (or "standing") and specifically identifies the persons or entities in whose favor the right of action to contest the incorporation is granted. In doing so, the statute itself confers a "real and actual interest" in the named persons or entities in the subject matter of the litigation. **Broome**, slip op. at 6. There is no limitation, whatsoever, in Paragraph A regarding what those who have been afforded a right of action can contest.

Paragraph D, on the other hand, does not address who possesses the right to sue, but addresses the subject matter of the litigation the *court* must resolve. Paragraph D declares what the *court* "shall determine" in adjudicating a contested incorporation. In doing so, it does not limit that determination based on who among the parties or entities delineated in Paragraph A brings suit. Rather, the Paragraph sets forth what the *court* must decide when a petition attacking the incorporation is filed; and, what the *court* must decide is not delineated using disjunctive language but conjunctions. In other words, Paragraph D requires the court to determine "whether there has been **full compliance**" with the requirements for a petition. It further states: "The court shall **also** reach a determination as to whether the municipality can in all probability provide the proposed public services within a reasonable period of time **and** whether the incorporation is reasonable." (Emphasis added.) There is no mention of a party in Paragraph D and, as such, no limitation on what a party with a

5

right of action can contest. *Under the guise of standing, the majority opinion in effect rewrites Paragraph D to limit what the district court "shall determine" in a suit challenging an incorporation based on which category of plaintiff enumerated in Paragraph A files suit.* However, had the legislature, in conferring the right of action granted in Paragraph A, intended to limit that right of action according to the category of plaintiff bringing suit, it could have done so. The legislature did not, and there is no support in the language of La. R.S. 33:4 for such a result. Once a party is granted statutory standing in Paragraph A without limitation, Paragraph D does not mention the parties and, thus, does not divest or limit the parties' rights regarding what can be contested. In sum, once Councilman Cole is granted a right of action in Paragraph A, he is statutorily allowed to challenge any issue related to incorporation.

The majority opinion in this case does not recognize that the right of action in this case is one conferred by statute, and in such an instance, it is only necessary to determine whether the plaintiff falls into the category of persons in whose favor the law grants the cause of action. There is not a separate "standing" requirement beyond that granted by statute.[2] The majority opinion likewise fails to recognize that there is only a singular cause of action here–the action contesting the incorporation. That cause of action implicates various considerations, but those considerations are left to the district court to resolve in the aggregate, and not piecemeal, depending on who contests the incorporation.

---

[2] The case of **Jenkins v. City of Baton Rouge**, 14-1235 (La.App. 1 Cir. 3/9/15), 166 So.3d 1032, cited by the majority, does not support a different result. In fact, **Jenkins** represents quite the opposite. **Jenkins** treats the right of action question as a matter of simple statutory construction. In **Jenkins**, the court's finding that the plaintiff did not possess a right of action was based on an interpretation of the express language of La. R.S. 33:174(A), which grants a right to action to "[a]ny interested citizen," and defines "interested" as "a real and personal stake in the outcome of the contest." **Jenkins,** 14-1235 at 6, 166 So.3d at 1036. This language stands in sharp contrast to the language of La. R.S. 33:4(A).

As La. R.S. 33:4(E) underscores,[3] an order of incorporation can only be entered after *all* three determinations required of the district court in Paragraph D are resolved favorably. La. R.S. 33:4(E)(1). If only *one* of the determinations is resolved unfavorably, or found lacking, "the district court shall enter an order denying the incorporation." La. R.S. 33:4(E)(2). Clearly, the statute contemplates that regardless of whom among the parties delineated in Paragraph A brings suit, there are three determinations that must be made by the district court before an order of incorporation can be entered. The majority's ruling in this case effectively rewrites the express and mandatory language of Paragraphs D and E to hold that only when the parties filing suit fall within the categories of those persons delineated in La. R.S. 33:4(A)(1) and (2) is strict compliance with the mandatory language of Paragraphs D and E required. The aim of statutory construction is to ascertain the intent of the legislature, not to rewrite it. The express language of the statute is the best evidence of what the legislature intended. See La. C.C. art. 9 ("When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.").

_____

[3] La. R.S. 33:4(E) provides, in relevant part:

> (1) If the district court determines that the provisions of the Subpart have been complied with, that the municipality has the capacity to provide the proposed public services within a reasonable period of time, and that the incorporation is reasonable, the district court shall enter an order declaring the date the municipality shall become incorporated. The order shall set forth the name and the boundaries of the municipality. Unless this order is vacated by a timely suspensive appeal, a copy of the order shall be filed in the office of the secretary of state.
>
> (2)(a) If the district court determines that the provisions of this Subpart have not been complied with, that the proposed municipality will not be able to provide the public services within a reasonable period of time, or that the incorporation is unreasonable, the district court shall enter an order denying the incorporation.

Based on the foregoing analysis, I respectfully submit that the majority opinion errs in holding that Councilman Cole is without a right of action to challenge the sufficiency of the petition and in pretermitting consideration of that issue. Further, with respect to that pretermitted issue, I find, consistent with the Court of Appeal's thorough and thoughtful statutory exegesis, that the petition at issue in this case fails to comport with the requirements of La. R.S. 33:1(A)(4) in that it does not include "[a] listing of the public services the municipal corporation proposes to render to the area *and* **a plan for the provision of these services**." (Emphasis and italics added.) Adopting the Court of Appeal's reasoning and conclusions as to the sufficiency of the petition:

> [I] do not find that the information contained in the petition for incorporation was sufficient to comply with the statutory requirements laid out in La. R.S. 33:1(A)(4). Although the petition listed the services that would be provided, the petition did not provide the necessary information to place citizens of the area to be incorporated on notice of a plan for the provision of those services. Further, a statement in the petition providing that "services will be provided subject to availability of funds derived from taxes, license fees, permits, and other revenue which becomes available to the municipality and are authorized by state law" does not constitute a plan for the provision of those services as required by La. R.S. 33:1.

**Broome v. Rials**, 22-1203, p. 25 (La. 7/14/23), 375 So.3d 428, 446.

Although I fully respect the majority vote of those within the affected area to incorporate and establish a community, the rules enacted by the legislature must be followed, precisely in order that those voters, when they go to the polls, will have the information needed to make an informed and reasoned decision. That information, according to statute, includes "[a] listing of the public services the municipal corporation proposes to render to the area **and** a plan for the provision of these services." La. R.S. 33:1(A)(4) (emphasis added). Here, while the petition might be construed to "minimally" satisfy the statutory requirement of a "listing of the public

8

services the municipal corporation proposes to render to the area," it does not include any semblance of a plan for the provision of those services, and thus falls woefully short of providing the information the legislature has deemed necessary for an informed electorate.

To the extent the majority opinion suggests that the statutory language requiring a plan for the provision of services was "minimally" satisfied in this case because the statute is silent "as to the requirements of the plan," **Broome**, slip op. at 7, n.8, the majority opinion completely misses the point. First, La. R.S. 33:4(D) requires "full compliance," not minimal compliance. Second, *no* plan for the provision of services–at least not one within the common meaning of the word "plan"[4]–was included in the petition. The Incorporators themselves characterized what they presented in the petition as a "summary" of a plan, and conceded the petition contains no information as to how any of the services the petition lists as those which "may be provided" are to be funded, outside of the caveat that "[a]ll services will be provided *subject to* the availability of funds derived from taxes, license fees, permits and other revenue which become available to the municipality and are authorized by state law." (Italics supplied.) As Incorporator Chris Rials acknowledged, there is no explanation in the petition as to the nature or source of these taxes, license fees, permits and other revenue (which may or may not be available). Rather, Rials, along with Incorporator Norman Browning, explained that when the petition was being drafted, there was a business plan in the works, but the Incorporators made the conscious decision not to include that plan in the petition. Rials testified that if someone wished to see the full plan for the proposed city of St.

---

[4] The word plan is defined as "a detailed scheme, program, or method worked out beforehand for the accomplishment of an object." WEBSTER'S II NEW COLLEGIATE DICTIONARY 842 (2001).

9

George, they would either have to go to the St. George website or the library, although the petition does not refer readers to either of those sites. Consistent with Rials, Browning elaborated, explaining that some services (such as public safety, sanitation and garbage, sewerage, emergency medical services and 911 services) would be provided through the consolidated government, while others "will be executed through ... a public private partnership," but he acknowledged that this information appears on the website, not the petition. This remarkable admission–not addressed in the majority opinion–that the actual "plan" was allegedly located on an unidentified website not even referenced on the petition conclusively demonstrates the petition's failure to "fully comply" with the mandatory provisions of La. R.S. 33:1(A)(4).[5] Moreover, and just as significantly, there is an "escape clause" in the petition that "all services will be provided subject to the availability of funds derived from taxes, license fees, permits and other revenue which become available to the municipality and are authorized by state law." An escape clause allowing the municipality to avoid altogether its promise to provide services is not the same as an affirmative plan to provide those services.

Given these facts, the majority's summary conclusion that the information included in the petition "minimally" satisfies the requirements of La. R.S. 33:1(A)(4) essentially renders the language "and a plan for the provision of these services" meaningless. This is underscored when one considers the legislative history of La. R.S. 33:1. As the court of appeal explained:

> Regarding the judicial review process and requirements of the petition
> for incorporation, a co-author of the bill stated that in many instances,
> the public is told grandiose exaggerations of the effects of the

---

[5] The Incorporators argue that the Transition District Legislation, La. R.S. 33:3076, *et seq.*, saves them from their failure to have a plan. However, that statute was not passed until June 2020, after the 2019 election, and cannot retroactively constitute a plan.

incorporation and what it will afford the residents, and the truth only comes out after the incorporation is finalized. It is clear that the legislature put extensive thought into these amendments and intended to protect the residents of a proposed area for incorporation from exaggerations regarding the benefits of incorporation by inserting additional requirements for the petition for incorporation.

**Broome v. Rials**, 22-1203 at 24-25, 375 So.3d at 445.

Those additional requirements, adjudged mandatory by the legislature, are seriously undermined, and the legislative intent eroded, by the majority opinion, which essentially alleviates the Incorporators from the obligation to "fully comply" with the requirement that the petition contain "[a] list of the public services the municipal corporation proposes to render to the area **and a plan for the provision of these services**." La. R.S. 33:1(A)(4) (Emphasis added.)

Effectively, the majority opinion avoids addressing the statutory insufficiency and inadequacies of the petition by imposing a requirement of "standing" on Councilman Cole that is not statutorily required. Councilman Cole has an unlimited right of action clearly statutorily provided by Paragraph A, not limited by Paragraph D, to contest any issue the trial court was obligated to resolve.

This dissent is not intended to defy the will of the majority of voters but rather to insure the law enacted by the legislature is applied as written so voters can cast an informed vote. Both the district court and the court of appeal applied the law and the facts to reach a conclusion (albeit on different grounds) that the incorporation effort does not comply with the law. As the lower courts recognized, the statutory requirements, carefully constructed by the legislature to insure citizens make informed decisions regarding incorporation, cannot be ignored or avoided. Ultimately, the majority opinion, rather than adhere to those statutory requirements, achieves a result dressed up as an opinion. Ignoring the law to achieve a result results

11

in the law losing all efficacy and meaning. Although a desired result may be achieved by ignoring the law, the cost to the system of justice is too great.

When laws enacted by the legislature to prevent grandiose promises unsupported by facts are ignored under the guise of a finding of no right of action (and in the face of a statutorily granted right of action), and an absolute requirement of the petition is not present, incorporation lacks a legal foundation. Unfortunately, in the majority opinion, the law enacted by the legislature is assigned a secondary role to achieve a result.

Therefore, I respectfully dissent from the majority opinion and would affirm the decisions below denying the incorporation.

MAYOR-PRESIDENT SHARON WESTON BROOME, LEWIS O. UNGLESBY, LAMONT COLE, AND M. E. CORMIER

VS.

CHRIS RIALS AND NORMAN BROWNING, ORGANIZERS OF THE PETITION TO INCORPORATE ST. GEORGE

On Writ of Certiorari to the Court of Appeal,
First Circuit, Parish of East Baton Rouge

**Crichton, J., dissents and assigns reasons.**

In my view, the majority erred in its analysis of both the exception of no right of action and the merits of this case. As to the first issue, I join the dissent of Chief Justice Weimer, and would find both that Councilman Cole has a statutory right of action and that the court of appeal correctly found the petition failed to comport with the requirements of La. R.S. 33:1(A)(4).

Though that should be the end of the analysis, because the majority proceeds to decide the merits of the case—specifically, the trial court's evaluation of incorporation under La. R.S. 33:4(E)—I also write separately to dissent on that holding. I find no error in the trial court determination that the proposed incorporation is unreasonable in accordance with La. R.S. 33:4(E). This matter comes before us after an eight-day bench trial, which included the testimony of 28 witnesses and the admission of more than sixty exhibits into evidence. The trial judge heard this live testimony and evidence, and it was only after this extensive presentation that he entered judgment denying the incorporation.

1

In reversing the trial court's judgment, the majority employs a *de novo* standard of review, purportedly due to the trial court's "error" in its analysis of reasonableness under the statute, which the majority argues led to legal error necessitating *de novo* review.[1] But, in my view, there was no "legal error" at all. A trial court is charged with determining "whether incorporation is reasonable" and "shall consider the possible adverse effects the incorporation may have on other municipalities in the vicinity." La. R.S. 33:4(D). That is all the statute directs; there is no stringent requirement of *how* that test must be conducted. Rather, the trial court is given broad discretion to consider all factors and give weight where it deems fit. *See Stobart v. State, through Dep't of Transp. and Dev.*, 617 So. 2d 880, 882-83 (La. 1993) ("[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony.") (citations omitted).

As the trial judge articulated in written reasons, the proposed incorporation was not reasonable because, *inter alia*, (i) St. George could not "in all probability provide the proposed public services within a reasonable period of time," (ii) "St. Geoge would operate at a deficit . . . on day one," and (iii) "the loss of revenue would have a substantial adverse impact on Baton Rouge." The trial court set forth detailed factual support derived from trial evidence and testimony for his determination of lack of reasonableness, which was made after extensive live presentation. For that reason, I do not find that the trial court committed manifest error in its determination that the proposed incorporation was unreasonable. *Stobart*, *id.*, 617 So. 2d at 882-83

---

[1] The majority makes this determination of "legal error" by relying upon a municipal ordinance that was not raised as a primary argument by any party in briefs or argument.

("[T]he reviewing court must always keep in mind that if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.") (quotation marks omitted).